**Jeffrey DUQUETTE, By and Through his mother and next friend, Nancy DUQUETTE, and all medically needy disabled individuals under the age of eighteen in the State of New Hampshire who have been denied or will be denied eligibility for Medicaid Assistance solely on the basis of the nature of the individuals' handicapping condition**

v.

**Sylvio DUPUIS, in his official capacity as Commissioner of the New Hampshire Department of Health and Welfare, Richard Chevrefils, in his official capacity as Director of the New Hampshire Division of Welfare.**

Civ. No. 83–112–D.

United States District Court,
D. New Hampshire.

March 22, 1984.

Ronald K. Lospennato, Developmentally Disabled Advocacy Center, Concord, N.H., for plaintiffs.

Peter T. Foley, Office of the Attorney General, Concord, N.H., for defendants.

## OPINION

DEVINE, Chief Judge.

This is a discrimination action under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (§ 504) wherein Jeffrey Duquette by his mother, Nancy Duquette, both individually and as a class representative, claims that the New Hampshire Medical Assistance Program ("NHMAP") unlawfully discriminates against plaintiff solely on the basis of his handicap. Plain-

tiff contends that the NHMAP discriminates unlawfully by providing medical assistance under the medically needy program only to persons under eighteen years of age who are blind, while denying benefits to persons under eighteen years of age who are handicapped by any other disability. Defendants have moved to dismiss the action under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. The issues presented for review by defendants' motion are, first, whether plaintiff has a private cause of action to enforce the provisions of § 504, and, second, whether plaintiff states a cognizable claim under § 504 in his allegation that the federally-funded and approved NHMAP discriminates unlawfully among handicapped individuals by excluding certain classes of disabled persons from eligibility based solely on the category of their handicap.

■ For the reasons stated below, the Court finds that defendants' motion to dismiss must be granted as plaintiff has failed to state a cognizable claim under § 504. In ruling on the motion, the Court follows the well-established requirement that the material facts alleged in the complaint are to be construed in the light most favorable to plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Melo-Tone Vending, Inc. v. United States*, 666 F.2d 687, 688 (1st Cir.1982).

### Factual Background

Jeffrey Duquette, the infant son of Nancy Duquette of Penacook, New Hampshire, is a Down's Syndrome child with severe heart and respiratory problems. Jeffrey has required extensive treatment for his heart and respiratory impairments in the past and must receive continuing medical care in the future. Second Amended Complaint, ¶¶ 20–22. The Duquette family has been unable to meet these medical costs, totaling over $100,000 in one year alone, and therefore applied to the New Hampshire Division of Welfare for Medicaid benefits on June 7, 1982. Plaintiff was determined to be ineligible, and his application was denied because the NHMAP does not award Medicaid benefits to permanently and totally disabled persons under eighteen years of age unless the person is deprived of parental support or is blind. Second Amended Complaint, ¶ 48.

### I. Private Cause of Action under § 504

■ Defendants' first challenge, asserting that plaintiff has no private cause of action under § 504, is without legal merit. Although neither the United States Supreme Court nor the First Circuit Court of Appeals has ruled on this issue, *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Ciampa v. Massachusetts Rehabilitation Commission*, 718 F.2d 1, 5 (1st Cir.1983) ("*Ciampa*"); *Rhode Island Handicapped Action Committee v. Rhode Island Public Transit Authority*, 718 F.2d 490, 493 (1st Cir.1983) ("*RIPTA*"), this Court has addressed the issue and held that a private cause of action exists under the statute. *Garrity v. Gallen*, 522 F.Supp. 171, 212 (D.N.H.1981).

### II. Cognizable Claim Under § 504

Defendants' second challenge asserts that plaintiff has failed to state a cognizable claim under § 504 for four reasons: first, plaintiff does not meet the express requirements of § 504; second, plaintiff's § 504 claim is inconsistent with federal regulation and statute; third, acceptance of plaintiff's § 504 claim would lead to results clearly not intended by § 504; and fourth, § 504 does not require the state to take the affirmative action sought by plaintiff. The determination as to whether plaintiff has stated a cognizable claim under § 504 is guided by three statutory sources: the federal Medicaid Act, 42 U.S.C. § 1396, *et seq.*; the New Hampshire Medicaid provisions, RSA 167:1–6; and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

### A. Analysis of Federal and State Medicaid Programs.

The federal Medicaid program originated in 1965 as Title XIX of the Social Security Act ("SSA") establishing a cooperative fed-

eral/state partnership to provide "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons". Act of July 30, 1965, Pub.L. No. 89-97, Title I, § 121(a), 79 Stat. 343; *Schweiker v. Hogan*, 457 U.S. 569, 571, 102 S.Ct. 2597, 2600, 73 L.Ed.2d 227 (1982). Although states are not required to participate, once a participant, a state must comply with all requirements imposed by the Social Security Act and regulations. 42 U.S.C. § 1396; *Massachusetts Association of Older Americans v. Sharp*, 700 F.2d 749, 750 (1st Cir.1983) ("*Sharp*"). New Hampshire participates in the Medicaid program (RSA 167:1-6), having developed a medical assistance program which conforms with the requirements of 42 U.S.C. § 1396a. 42 U.S.C. § 1396a(b).

As a participating state, New Hampshire must provide assistance to the "categorically needy", and may choose to provide assistance to the "medically needy". 42 U.S.C. § 1396a(a)(10); 42 C.F.R. §§ 435.-100-435.340 (1981). Categorically needy individuals are those receiving federal cash assistance through other programs such as Aid to Families with Dependent Children ("AFDC") or Supplemental Security Income for the Aged, Blind and Disabled ("SSI"). 42 U.S.C. § 1396a(a)(10); *Schweiker v. Gray Panthers*, 453 U.S. 34, 37-39, 101 S.Ct. 2633, 2636-38, 69 L.Ed.2d 460 (1981). Medically needy individuals are those lacking the ability to pay for medical expenses, but with incomes too large to qualify for categorical assistance. *Schweiker v. Hogan, supra*, 457 U.S. at 572-73, 102 S.Ct. at 2600-01; *Schweiker v. Gray Panthers, supra*, 453 U.S. at 37, 101 S.Ct. at 2636; *Sharp, supra*, 700 F.2d at 750. Plaintiff claims he should qualify as medically needy.

Federal Medicaid law expressly authorizes states to choose between two options regarding eligibility requirements for categorically and medically needy medical as-

sistance. States may choose to become a "SSI" state—that is, a provider of medical assistance to all individuals qualifying for categorical assistance under the more expansive 1972 federal SSI program (42 U.S.C. § 1381, *et seq.*, Pub.L. 92-603, 86 Stat. 1465), or a "§ 209(b) option" state—that is, a provider of medical assistance to only those individuals qualifying for categorical assistance under the more restrictive pre-1972 federal programs (Old Age Assistance, 42 U.S.C. §§ 301, *et seq.* [1970 ed.]; AFDC, §§ 601, *et seq.;* Aid to the Blind, §§ 1201, *et seq.;* and Aid to the Permanently Disabled, § 1351, *et seq.* ["APTD"]). Congress provided the § 209(b) option, 42 U.S.C. § 1396a(f), fearing that states might withdraw completely from the Medicaid program if forced to offer and fund expanded Medicaid provisions commensurate with the expanded coverage of the 1972 SSI program guidelines. *Schweiker v. Gray Panthers, supra*, 453 U.S. at 38-39, 101 S.Ct. at 2637-38; *West v. Cole*, 390 F.Supp. 91, 99 (N.D. Miss.1975); *see* 1972 U.S.Code Cong. & Admin.News 5183.

New Hampshire is a "§ 209(b) option" state, and therefore the eligibility standards for medical assistance are the same as those in effect in New Hampshire on January 1, 1972. 42 U.S.C. § 1396a(f); 42 C.F.R. §§ 435.121, 435.330, and 435.520 (1981). In order to be eligible for medical assistance under the NHMAP, either under the APTD or corresponding medically needy programs, a sighted, disabled person must be between the ages of eighteen and sixty-four. RSA 167:6 VI; RSA 167:6 VII, 1983 Laws Ch. 469:14 III (Supp.1983).[1] However, a blind disabled person of any age may qualify for medical assistance under the categorical Aid to the Needy Blind ("ANB") program or corresponding medically needy assistance program because ANB has no age limitations. RSA 167:6 IV; RSA 167:6 VII; 1983 Laws Ch. 469:14 III (Supp.1983).[2] Again, this age distinc-

---

**1.** In practice, the age limitation excludes only persons under eighteen, as persons over sixty-four can qualify for assistance under the categorical Old Age Assistance program or corresponding medically needy program. RSA 167:6

I; RSA 167:6 VII; 1983 Laws Ch. 469:14 III (Supp.1983).

**2.** As noted by defendants, this age distinction between the APTD and ANB programs in New

tion in the NHMAP is expressly authorized by the federal Medicaid program provisions, § 209(b) of the SSA, 42 U.S.C. § 1396a(f); 42 C.F.R. §§ 435.1; 435.121; 435.330 (1981); *Schweiker v. Gray Panthers, supra,* 453 U.S. at 38–39, n. 6, 101 S.Ct. at 2637–38, n. 6.

*B. Analysis of Section 504 Claim.*

Yet plaintiff contends that New Hampshire's Medicaid provisions violate another federal statute, the Rehabilitation Act of 1973, § 504, which provides:

> No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794. Plaintiff claims that New Hampshire's disparate age eligibility requirements in the ANB and APTD programs violate the § 504 discrimination prohibition in that plaintiff is excluded from participation in the medical assistance program solely by reason of his handicap, a disability other than blindness. Plaintiff argues on the one hand that the federal funding provisions of the Medicaid statute (42 U.S.C. § 1396a) do not sanction New Hampshire's APTD medical assistance program eligibility limitations, but instead merely provide a state with the option to enact these limitations. On the other hand, plaintiff argues that the anti-discrimination provisions of an entirely separate act, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, impose a binding obligation on New Hampshire to allocate Medicaid funds without regard to the nature of an applicant's handicap. In essence, plaintiff attempts to transform the § 504 shield against invidious discrimination into a sword to secure expanded state aid programs and equal medical assistance benefits for all classes of handicapped persons.

Plaintiff's § 504 attack on NHMAP eligibility requirements is barred by the rulings in *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (*"Pennhurst I"*), and *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (*"Davis"*). As argued by defendants in their second and third grounds for dismissal, § 504 does not override the express Medicaid program eligibility requirements and funding conditions found at 42 U.S.C. § 1396a. *See Pennhurst I, supra,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694. Furthermore, § 504 does not require states to undertake "affirmative action" such as expanded medical assistance programs to overcome the disabilities of handicapped persons, as argued by defendants' fourth ground for dismissal. *Davis, supra,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980. Given the Court's ruling on these grounds, defendants' first ground for dismissal, that § 504 does not prohibit discrimination against plaintiff vis-a-vis other classes of handicapped persons, need not be considered.[3]

*C. Section 504 Does Not Amend Medicaid Funding Conditions.*

In *Pennhurst I,* the Court held that the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6010, did not afford mentally retarded plaintiffs

---

Hampshire originated in the federal Title XIV APTD eligibility requirements which preceded the 1972 SSI program. 42 U.S.C. §§ 1201 and 1351 (1970 ed.). This age distinction is currently applied in the federal APTD programs in certain United States territories, including Puerto Rico, Guam, and the Virgin Islands, 42 U.S.C. §§ 1351, 1381; 1396d(a)(v). Similarly, the federal assistance programs in these territories include disparate income eligibility disregards for blind individuals as opposed to other disabled individuals. 42 U.S.C. § 1382(a)(14)(A)–(B) (appearing in note following codification of current 42 U.S.C.A. § 1382. *See* Historical Note, "Prior Provisions" and "Puerto Rico, Guam and Virgin Islands".

3. This Court is aware of the First Circuit's "serious doubts" as to whether Congress intended § 504 to provide plaintiffs with a claim for discrimination vis-a-vis other handicapped individuals. *Colin K. v. Schmidt,* 715 F.2d 1, 9 (1st Cir.1983) (and cases cited therein). *But see Garrity v. Gallen,* 522 F.Supp. 171, 217–18 (D.N. H.1981) (§ 504 requires that federally funded state program, viewed in its entirety, be available to all classes of handicapped persons).

any substantive rights to treatment in the least restrictive manner possible, finding that the general provisions of § 6010 constituted mere "congressional encouragement" of state programs in contrast to other provisions of the Act (§§ 6005, 6009, 6011, 6012, 6063, and 6067) where Congress had set forth explicit and binding conditions on the grant of federal funds to states. *Id.* 451 U.S. at 23–27, 101 S.Ct. at 1543–45. The Court reasoned that Congress did not intend to impose an implicit funding condition through the generalized language of § 6010 in light of both the explicit conditions Congress imposed on states elsewhere in the Act and in light of the general rule of statutory construction that Congress "must express clearly its intent to impose conditions on the grant of federal funds so that States can knowingly decide whether or not to accept those funds", especially where the state's potential obligations were largely indeterminate. *Id.* at 24–25, 101 S.Ct. at 1543–44.

The *Pennhurst I* Court drew an analogy to its decision in *Davis, supra,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980, where the distinction between congressional encouragement and binding congressional funding conditions on state programs had been delineated in the context of § 504:

> Relying on that distinction, this Court in *Southeastern Community College v. Davis* [*supra*] rejected a claim that § 504 of the Rehabilitation Act of 1973, which bars discrimination against handicapped persons in federally funded programs, obligates schools to take affirmative steps to eliminate problems raised by an applicant's hearing disability. Finding that 'state agencies such as Southeastern are only "encourage[d] ... to adopt and implement such policies and procedures," ' *id.,* at 410 [99 S.Ct. at 2369] (quoting the Act), we stressed that 'Congress understood [that] accommodation of needs of handicapped individuals may require affirmative action and knew how to provide for it in those instances where it wished to do so.' *Id.,* at 411 [99 S.Ct. at 2369]. Likewise in this case, Congress was aware of the need of developmentally disabled persons and plain-

ly understood the difference, financial and otherwise, between encouraging a specified type of treatment and mandating it.

451 U.S. at 27, 101 S.Ct. at 1545. Thus, the United States Supreme Court has stated clearly that only explicit statutory provisions will suffice to impose binding funding conditions on state recipients of federal funds.

Following the *Pennhurst I* rule of statutory construction, the Court finds that § 504 does not impose binding conditions on the use of federal Medicaid funds such that New Hampshire would be required to extend medical assistance benefit to all classes of disabled persons if it provides assistance to persons disabled by reason of blindness. There is nothing in the general language of § 504 to impose binding funding requirements on New Hampshire to require the distribution of Medicaid funds to all classes of handicapped persons. The relevance of the general provisions of § 504 are further eroded by the fact that the federal Medicaid Act sets out detailed and explicit funding conditions which must be fulfilled by states to earn program approval from the Secretary of Health and Human Services. 42 U.S.C. §§ 1396 and 1396a. As noted by the Court in *Pennhurst I, supra,* 451 U.S. at 27, 101 S.Ct. at 1545, and *Davis, supra,* 442 U.S. at 411, 99 S.Ct. at 2369, the fact that Congress did not include explicit conditions concerning distribution of Medicaid funds among all classes of handicapped persons in the relevant Medicaid funding condition provisions, 42 U.S.C. § 1396a, indicates that Congress never intended that § 504 be construed to impose fund distribution conditions on state recipients in addition to the explicit conditions of 42 U.S.C. § 1396a. *Cf., Smith v. Cumberland School Committee,* 703 F.2d 4, 9–10 (1st Cir.1983) (ruling that in determination of attorney's fee award, the comprehensive remedial scheme of Education for All Handicapped Children Act, 20 U.S.C. §§ 1401, *et seq.,* an Act specifically governing rights of handicapped children to an appropriate public education, controlled over the remedial scheme of the more gen-

eral Rehabilitation Act of 1973, an Act prohibiting discrimination against handicapped persons); *see also Ciampa; supra,* 718 F.2d at 5, n. 3; *Colin K. v. Schmidt, supra,* 715 F.2d at 9–10.

As noted by the United States Supreme Court in *Pennhurst I, supra,* 451 U.S. at 22, 101 S.Ct. at 1542, *quoting Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), the Medicaid statute "was designed as a cooperative of shared responsibilit[ies], not as a device for the Federal Government to compel a state to provide services that Congress itself is unwilling to fund". In the Social Security Act Amendments of 1972, P.L. 92–603, 86 Stat. 1329, and supporting legislative history, Congress clearly expressed its intent that states be relieved of the obligation to fund medical assistance programs for new SSI recipients, such as plaintiff, who did not qualify for benefits under state programs in effect on January 1, 1972 (42 U.S.C. § 1396a[f]). In light of this express Congressional intent, it "defies common sense ... to suppose Congress implicitly imposed [a] massive obligation on participating States" to provide such medical assistance with the 1973 passage of the general discrimination prohibition of § 504 of the RHA, 29 U.S.C. § 794.[4] *Pennhurst I, supra,* 451 U.S. at 24, 101 S.Ct. at 1543. *See Doe v. Colautti,* 454 F.Supp. 621, 626–31 (E.D.Penn.1978), *aff'd,* 592 F.2d 704, 707–10 (3d Cir.1979). This conclusion is buttressed by the fact that the federal government itself has been unwilling to provide medical assistance to disabled persons younger than eighteen years under the APTD program in the American territories. 42 U.S.C. §§ 1351, 1381, and 1396d(a)(v). *See* n. 2, *supra.*

There is nothing in § 504 of the RHA or its legislative history to indicate that Congress intended to tamper with the intricate Medicaid Act funding provisions enacted one year earlier. Plaintiff claims that the broad language of § 504 and regulations promulgated thereunder by the Secretary of Health and Human Services, 45 C.F.R. § 84.1, *et seq.,* contain no limitations and therefore must be construed to prohibit discrimination among handicapped persons in allocation of medical assistance benefits under the Medicaid program. Plaintiffs offer no authority for this theory, and it is clear under the holding of *Pennhurst I, supra,* 451 U.S. at 27, 101 S.Ct. at 1545, that only explicit, detailed statutory language will be construed as binding conditions on the grant of federal funds. Plaintiff's contention is further undercut by the fact that other regulations promulgated by the Secretary of Health and Human Services at 42 C.F.R. part 435 specifically authorize a state's exercise of the § 209(b) option under the Medicaid Act (42 C.F.R. §§ 435.-1[d]; 435.121; 435.330 [1981]), and make no reference to discrimination among classes of handicapped persons as a criterion for Secretarial approval or termination of federal Medicaid benefits to states. 42 U.S.C. § 1396a(a) and (d); 42 C.F.R. §§ 431.10, *et seq.,* and 431.801–431.802 (1981).

*D. Section 504 Does Not Require Affirmative Medical Assistance Programs for the Handicapped.*

Plaintiffs attempt to avoid the shoals of *Pennhurst I, supra,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694, by framing their complaint as one for wrongful exclusion from a federal benefits program by reason of invidious discrimination.[5] However, even

---

**4.** Plaintiff Duquette's medical bills exceeded $100,000 in 1982 alone.

**5.** Plaintiffs rely upon *Jennings v. Alexander,* 715 F.2d 1036 (6th Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 1271, 79 L.Ed.2d 677 (1984), where the Court ruled that plaintiffs had stated a *prima facie* case of discrimination under § 504 by demonstrating that a Tennessee Medicaid program regulation imposing a fourteen-days-a-year limit on Medicaid reimbursement had a disparate impact on handicapped persons.

*Id.* at 1040, 1042–44. The *Jennings* decision is distinguishable from the case at bar in three respects: first, defendants apparently did not raise and the Court did not consider the statutory construction defense offered by *Pennhurst I, supra,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694, concerning explicit funding requirements; second, the Tennessee program eligibility requirement had not been approved by the Secretary, *id.,* at 1045; and, third, plaintiffs complained of discrimination between handicapped and nonhandicapped persons.

this discrimination strategy founders, barred by the ruling of *Davis, supra*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980. In *Davis*, the Court held that § 504 does not forbid the imposition of physical qualifications for admission to professional school training programs, reasoning that § 504 required only evenhanded treatment of qualified handicapped persons, but did not require affirmative efforts by federal funds recipients to overcome the disabilities caused by handicaps. *Id.* at 410–11, 99 S.Ct. at 2369. The Court determined that the school's refusal to make major adjustments in the nursing education curriculum in order to accommodate a deaf applicant did not constitute discrimination, given the fact that the refusal was not motivated by any animus against handicapped persons, but rather was motivated by the school's purpose to train persons who could serve the nursing profession in all customary ways. *Id.*, 412–13, 99 S.Ct. at 2370.

■ In the instant case, plaintiff claims that the exclusion of all sighted, disabled children under eighteen from medical assistance under the NHMAP solely on the basis of the nature of their handicap is invidious discrimination and therefore barred by § 504. Having included one class of blind, disabled persons under eighteen, plaintiff argues that New Hampshire must now include all other disabled persons in the program to assure "evenhanded treatment" under § 504. The flaw in plaintiff's argument is revealed by plaintiff's requested remedy: Should plaintiffs prevail, New Hampshire would be required to make major modifications in its APTD and corresponding medical assistance programs, as well as substantial additional expenditures in order to fund medical assistance benefits for plaintiff and all other sighted, disabled children.[6] Thus, plaintiff's "wrongful exclusion" claim is actually a request for affirmative action, clearly barred by the *Davis* holding that § 504 does not require such affirmative action to overcome disabilities either by substantial program modifications or by additional expenditures. *Id.* at 410–12, 99 S.Ct. at 2369–

70; *see generally Ciampa, supra*, 718 F.2d at 5, n. 4; *Colin K. v. Schmidt*, 536 F.Supp. 1375, 1388 (D.R.I.1982) (funding residential placement for learning-disabled children constituted "affirmative conduct" not required by RHA), *aff'd sub nom.*, *Colin and Alan K. v. Schmidt, supra*, 715 F.2d at 9.

■ Nor can plaintiffs argue that the state's refusal to expand the eligibility requirements for medical assistance to include plaintiff is so unreasonable and arbitrary as to be unlawful discrimination. Plaintiffs do not allege that New Hampshire's exclusion of sighted, disabled children from medical assistance is motivated by any animus against handicapped individuals. In fact, the statutory history reveals that the exclusion is based on congressional authorization designed to encourage continued state participation in the Medicaid program through limitation of the state's financial commitment. *Schweiker v. Gray Panthers, supra*, 453 U.S. at 38–39, 101 S.Ct. at 2637–38. As noted by the *Davis* court, the Department of Health and Human Services ("HHS") is charged with primary responsibility to identify instances where refusal to modify existing programs is discriminatory. Here, HHS has actually authorized New Hampshire's medical assistance eligibility requirements. 42 U.S.C. § 1396a(f); 42 C.F.R. §§ 435.1, 435.121, and 435.330 (1981). In the absence of any statutory or regulatory requirement identifying as discriminatory the refusal to undertake affirmative action by extending additional services to the handicapped, this Court is not at liberty to fashion its own affirmative action requirements. In *RIP-TA, supra*, 718 F.2d at 497, the First Circuit cautioned against judicial imposition of affirmative obligations upon federal fund recipients pursuant to § 504 in the absence of agency guidelines:

> Dependence upon the responsible federal executive agency to flesh out any affirmative action obligation imposed by section 504 seems far preferable to a

---

**6.** New Hampshire could also choose to withdraw entirely from the cooperative Medicaid

program, but it is clear that plaintiffs would not be served by this option.

*post hoc* case by case cost-benefit analysis undertaken by individual district courts around the nation. The district court's approach was to decide for itself, after hearing, what long- and short-range measures for Rhode Island handicapped would be cost effective and fair, and then to label RIPTA's failure to have adopted these measures as 'discriminatory'....

We conclude, therefore, that the district court erred in ordering affirmative relief based on its own cost-benefit analysis; to the extent Congress authorized modest affirmative relief under section 504 in situations where the line between overt discrimination and affirmative action is hard to draw, we think primary guidance must come from the regulations promulgated by the federal agency responsible for overseeing the federal funds being used by the state or local agency. Some deference is also owed to the policy choices of state and local agencies. Judicial review, to the extent authorized, is limited to the more usual role of disapproving actions found to be illegal, arbitrary or capricious.

718 F.2d at 497, 499. Thus, in spite of plaintiff's obvious need for medical assistance and the compelling nature of his request for medical assistance equal to that afforded other disabled persons under the NHMAP, this Court is not authorized to fashion affirmative medical assistance requirements pursuant to § 504, thereby overruling the judgment of New Hampshire and Congress on this matter of social policy.

### Conclusion

In sum, the Court finds that plaintiff has failed to state a cognizable claim under § 504 of the Rehabilitation Act of 1973 in that § 504 does not modify the funding conditions or medical assistance eligibility requirements of the Medicaid Act, 42 U.S.C. § 1396a. Accordingly, the Court grants defendants' motion to dismiss.

SO ORDERED.