Merrimack
No. 2005-522

BEL AIR ASSOCIATES

v.

NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES

Argued: March 17, 2006
Opinion Issued: September 28, 2006

*Devine, Millimet & Branch, P.A.*, of Manchester (*Thomas Quarles* on the brief and orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Suzan M. Lehmann*, senior assistant attorney general, and *Laura Lombardi*, assistant attorney general, on the brief, and *Ms. Lehmann* orally), for the respondent.

DUGGAN, J. The petitioner, Bel Air Associates, appeals two orders of the Superior Court (*McGuire*, J.), the first granting the motion to dismiss filed by the respondent, the New Hampshire Department of Health and Human Services (DHHS), and the second denying the petitioner leave to further amend its complaint after the dismissal. We affirm in part and reverse in part.

The petitioner's amended complaint alleges the following facts. The petitioner is a New Hampshire partnership that operates a State-licensed nursing home in Goffstown. In the mid-1990s, the State ordered the petitioner to close one of its two buildings. In order to replace the capacity lost due to this closure, the petitioner sought and received approval from the State for the construction of an addition.

DHHS is responsible for administering the Medicaid program in New Hampshire. The Medicaid program, which provides joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs, began in 1965 with the enactment of Title XIX of the Social Security Act. *See* Pub. L. No. 89-97, § 121(a), 79 Stat. 343 (1965); 42 C.F.R. 430.0 (2005).

States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care, and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program.

*Arkansas Dept. of Health and Human Serv. v. Ahlborn*, 126 S. Ct. 1752, 1758 (2006).

In order to be eligible to participate in Medicaid, States must submit and receive approval for their "State plans for medical assistance." *See* 42 U.S.C. § 1396 (2000).

The State plan is a comprehensive written statement submitted by the agency describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity with the specific requirements of title XIX, the regulations in [42 C.F.R.] Chapter IV, and other applicable official issuances of the [Federal] Department [of Health and Human Services].

42 C.F.R. § 430.10 (2005). Title XIX provides detailed requirements for the contents of the State plan. *See* 42 U.S.C. § 1396a(a) (2000). DHHS does not currently put the State plan through the State rulemaking process outlined in RSA chapter 541-A, the New Hampshire Administrative Procedure Act (APA), although it has submitted the relevant provisions of the State plan to rulemaking in the past. *See* "Methods and Standards for Reimbursement on a Reasonable Cost-Related Basis for Long-Term Facilities Under Title XIX of the Social Security Act," Off. Leg. Serv. Div. Admin. Proc. Doc. #983 ("Attachment 4.19-D") (eff. July 19, 1977).

DHHS establishes rates of reimbursement for providers of services to Medicaid-eligible persons. Reimbursement is based upon certain allowable costs, including certain capital costs. *See* N.H. ADMIN. RULES, He-W 593.02 (2004) (amended and readopted as He-E 806.05 (2006)). The methodology used by DHHS to determine the actual reimbursable rates is set out in part in rules adopted through the APA and in part in "Attachment 4.19-D of the Title XIX State Plan." *See* N.H. ADMIN. RULES, He-W 593.04(a) (1997) (amended and readopted as He-E 806.31(a) (2006)).

The petitioner alleges that in 2001, DHHS utilized two techniques to reduce reimbursements to nursing homes. First, "DHHS changed its rate-setting methodology to impose a cap on capital cost recoveries at the 85th percentile of all nursing homes' allowable capital costs expenses." Second,

"DHHS created what it calls the 'budget neutrality factor' . . . an across-the-board rate reduction which DHHS applies after DHHS determines the individual rate which it should pay to nursing homes for Medicaid reimbursement for the prospective six month rate period." These reductions were both implemented through amendments to the State plan, and not put through the APA process.

The petitioner filed suit in late December 2003, challenging both reductions. In January 2004, before DHHS had been served, the petitioner filed its first motion to amend its complaint. That motion was granted in February 2004. A second motion to amend was granted in December 2004. As amended, the complaint contains three counts. The first count alleges a violation of the Social Security Act. The second count alleges a violation of the State and Federal Constitutions. The third count alleges a violation of the APA and seeks damages.

DHHS filed a motion to dismiss. The trial court dismissed the first count, ruling that the claim under the Social Security Act was barred by a recent First Circuit Court of Appeals case. *See Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50 (1st Cir. 2004). The trial court dismissed the second count because the petitioner had failed to allege facts sufficient to constitute either a violation of equal protection or a taking under the State or Federal Constitutions. The trial court dismissed the third count, ruling that the doctrine of sovereign immunity barred a damage action under the APA.

The petitioner appeals the dismissal of its second and third counts.

> In reviewing the trial court's grant of a motion to dismiss, our task is to ascertain whether the allegations pleaded in the plaintiff's writ are reasonably susceptible of a construction that would permit recovery. We assume all facts pleaded in the plaintiff's writ are true, and we construe all reasonable inferences drawn from those facts in the plaintiff's favor. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law.

*Berry v. Watchtower Bible & Tract Soc.*, 152 N.H. 407, 410 (2005) (quotations and citations omitted).

As to the third count, the petitioner first argues that the provisions in the State plan imposing the capital cost cap and budget neutrality factor are rules that have never been properly adopted under the APA, are therefore invalid, and may not be used to reduce the level of reimbursement. DHHS argues that these provisions are exempt from the APA. The trial court did not address these arguments and instead ruled that the petitioner had not properly brought a declaratory judgment action

pursuant to RSA 541-A:24 (1997) to determine whether DHHS has complied with the APA.

We first examine whether the amended complaint constitutes a declaratory judgment action under RSA 541-A:24, which provides:

The validity or applicability of a rule may be determined in an action for declaratory judgment in the Merrimack county superior court if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.

■ RSA 541-A:24 "on its face requires only that a plaintiff challenging the validity of a rule allege that the rule impairs or interferes with a right or privilege." *Town of Orford v. N.H. Air Resources Comm.*, 128 N.H. 539, 541 (1986) (emphasis omitted). The petitioner's complaint alleges that the "imposition of the 85th percentile cap was not done through the mandatory rule-making process" and that without that change to the State plan, Bel Air would be "entitled to be reimbursed for 100% of its allowable capital costs." The petitioner's complaint also alleges that the "creation and use of this budget neutrality factor without legislative authorization, and without adherence to the rulemaking mandates of RSA 541-A, constitutes a violation of RSA 541-A" and that "it would have received [more reimbursement] had the budget neutrality factor not been applied." These allegations are sufficient to state a claim under RSA 541-A:24. We therefore conclude that the trial court erred in dismissing count III of the petitioner's amended complaint on the ground that it was not properly brought in accordance with RSA 541-A:24.

The second issue raised by the petitioner in its appeal of the dismissal of count III concerns the validity of the capital cost cap and budget neutrality factor under the APA. Although the trial court did not reach this issue, we exercise our discretion to address it given that it has been fully briefed and because the proper interpretation of a statute is a question of law for this court to decide. *See Thayer v. Town of Tilton*, 151 N.H. 483, 486 (2004).

■ In determining whether these amendments to the State plan violate the APA, we first consider whether they are rules within the meaning of RSA 541-A:1, XV (Supp. 2005), which provides:

"Rule" means each regulation, standard, or other statement of general applicability adopted by an agency to (a) implement, interpret, or make specific a statute enforced or administered by such agency or (b) prescribe or interpret an agency policy, procedure or practice requirement binding on persons outside

the agency, whether members of the general public or personnel in other agencies.

The petitioner asserts that these amendments are binding on persons (such as itself) outside the agency. *See* RSA 541-A:1, XIII (Supp. 2005) ("person" defined to include partnerships such as the petitioner). Where an agency's efforts "effect substantive changes binding on persons outside the agency, the agency's policy constitutes a 'rule' that must be promulgated pursuant to the APA." *Asmussen v. Comm'r, N.H. Dep't of Safety*, 145 N.H. 578, 592-93 (2000). We therefore conclude that these provisions of the State plan are rules under RSA 541-A:1, XV. *See Maxi Drug N. v. Comm'r, N.H. Dep't of Health & Human Servs.*, 154 N.H. 102, 105 (2006) (temporary presumption binding upon all pharmacy providers receiving Medicaid reimbursement was a rule under RSA 541-A:1, XV).

DHHS argues that RSA chapter 151-E authorizes it to implement these changes to the State plan, and that RSA 151-E:6, I (2005) implicitly exempts them from the requirements of the APA. The petitioner argues that RSA 161:4, VI (2002), which authorizes DHHS to "establish rates of reimbursement to providers of medical services under the medical assistance program," provides the authority to implement these changes to the State plan.

RSA 161:4, VI by its terms applies generally to reimbursement for medical services provided under Medicaid. *See Maxi Drug N.*, 154 N.H. at 107 (DHHS acted pursuant to RSA 161:4, VI when it adopted a rule relative to rates of reimbursement to pharmaceutical providers). By contrast, RSA chapter 151-E deals specifically with nursing facilities. *See* RSA 151-E:1 (2005). RSA 151-E:6, I, provides:

> The department shall pursue as expeditiously as possible the development and implementation of a reimbursement system for nursing facility services based primarily on the acuity level of patients consistent with state and federal law and all appropriate notice requirements.

"It is a well-recognized rule of statutory construction that where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the latter will be regarded as an exception to the general enactment where the two conflict." *State v. Bell*, 125 N.H. 425, 432 (1984). We also note that RSA 161:4, VI was enacted in 1991, while RSA chapter 151-E was enacted in 1998. "When a conflict exists between two statutes, the later statute will control, especially when the later statute deals with a subject in a specific way and the earlier enactment treats that subject in a general fashion." *Petition of*

*Public Serv. Co. of N.H.*, 130 N.H. 265, 283 (1988) (quotations omitted), *appeal dismissed*, 488 U.S. 1035 (1989). We thus agree with DHHS that RSA 151-E:6, I, is the source of authority for DHHS to implement the changes to the State plan regarding reimbursement to nursing homes.

RSA 151-E:12 provides a clear statement that DHHS must comply with the APA when adopting rules for reimbursement for nursing home services.

> The commissioner of the department of health and human services shall adopt rules, pursuant to RSA 541-A, relative to the administration of this chapter.

Despite the clear, unambiguous language of RSA 151-E:12, DHHS urges us to infer an exemption from the last phrase in RSA 151-E:6, I; to wit, "consistent with state and federal law and all appropriate notice requirements." DHHS argues that this phrase refers not to the notice requirements of the APA, but solely to "the notice requirements of the State Plan Amendment process under federal law."

■ DHHS argues that the phrase "all appropriate notice requirements" would be "unnecessary and redundant" if the legislature intended DHHS to follow the APA rulemaking procedures, since the legislature already required compliance with the APA in RSA 151-E:12. *See State v. Willard*, 139 N.H. 568, 570 (1995) (in interpreting the meaning of statutory provisions, we presume that the legislature does not enact unnecessary and duplicative provisions). DHHS thus contends that RSA 151-E:12, which explicitly requires compliance with the APA, is trumped by an implicit exemption from the requirements of the APA in RSA 151-E:6, I. We decline to construe these two sections as inconsistent. *See Swiezynski v. Civiello*, 126 N.H. 142, 148 (1985) (where reasonably possible, statutes should be construed as consistent with each other). We thus disagree with DHHS that RSA 151-E:6, I, creates an exemption from the APA.

■ Finally, DHHS argues that we should give deference to its "longstanding interpretation" of RSA chapter 151-E. We have noted that, when interpreting a statute, "the long-standing practical and plausible interpretation applied by the agency responsible for its implementation, without any interference by the legislature, is evidence that the administrative construction conforms to the legislative intent." *N.H. Retirement System v. Sununu*, 126 N.H. 104, 109 (1985) (quotations omitted). In this case, the challenged changes occurred in 2001, only two years after DHHS implemented the acuity-based reimbursement system mandated by RSA chapter 151-E. Even if the practice had occurred over many years, however, the "administrative interpretation of a statute is

irrelevant . . . if such interpretation is in clear conflict with the express statutory language." *Id.* at 109 (quotations omitted). In this case, the interpretation urged by DHHS is in clear conflict with RSA 151-E:12.

Accordingly, we hold that the capital cost cap and the budget neutrality factor are rules that were not adopted in accordance with the APA. They are therefore not valid or effective against the petitioner. *See* RSA 541-A:22.

The third issue raised by the petitioner in its appeal of the dismissal of count III concerns whether the petitioner may seek damages against DHHS for this violation of the APA. The trial court dismissed the damage claim on the basis of sovereign immunity. "In New Hampshire, the State is immune from suit in its courts without its consent." *Lorenz v. N.H. Admin. Office of the Courts*, 152 N.H. 632, 634 (2005).

The petitioner has not argued that any provision of the APA expressly or impliedly consents to damage actions arising out of violations of the APA. Instead, the petitioner argues that its right to damages arises out of a contract with the State. *See* RSA 491:8 (1997) (superior court may hear claims "founded upon any express or implied contract with the state"). We need not address this argument, as the amended complaint does not directly allege the existence of such a contract or that the petitioner's damages result from a breach of that contract.

The petitioner did, however, raise the contract claim in a motion to amend filed after the trial court had dismissed its amended complaint. The petitioner sought leave to include two new counts: one count under RSA 491:8 for breach of contract between the petitioner and the State and a second count for relief under RSA chapter 541-B (1997 & Supp. 2005). The trial court denied the motion, finding: "The petitioner was given ample opportunity to amend its pleadings and twice did so. The amendments it seeks to make now include issues that were identified in earlier pleadings and could have been included in prior motions to amend. Further, the amendments sought [to] introduce two new causes of action."

On appeal the petitioner argues that it should be given leave to amend the complaint before any adverse judgment has preclusive effect. *See Cambridge Mut. Fire Ins. Co. v. Crete*, 150 N.H. 673, 678 (2004). The petitioner, citing 42 C.F.R. 488.456 (2005) (termination of provider agreement ends payments to nursing facility), also argues that the existence of a contract may reasonably be inferred from its pleadings since a Medicaid provider contract is a prerequisite to reimbursement under federal law.

Under RSA 514:9 (1997), the trial court may permit a substantive amendment to pleadings, "in any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to

the court that it is necessary for the prevention of injustice." "Accordingly, this court allows liberal amendment of pleadings unless the changes surprise the opposite party, introduce an entirely new cause of action, or call for substantially different evidence." *Clinical Lab Prod's Inc. v. Martina*, 121 N.H. 989, 991 (1981) (citations omitted). While amendment of pleadings is liberally permitted, the decision to grant or deny a motion to amend rests in the sound discretion of the trial court. *Belcher v. Paine*, 136 N.H. 137, 148 (1992). We will not overturn that decision unless it is an unsustainable exercise of discretion. *Cambridge Mut. Fire Ins. Co. v. Crete*, 150 N.H. at 678; *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

The record supports the findings of the trial court. DHHS agreed to postpone filing its motion to dismiss until the petitioner had filed its second amended writ, which added the challenge under the APA. The contract and negligence claims that the petitioner now seeks to add were not based upon newly discovered information. The petitioner identified RSA 491:8 in two of its pre-dismissal pleadings; DHHS identified both statutes in one of its pre-dismissal pleadings. As we have observed, the doctrine of amendment is not limitless. *Follender v. Scheidegg*, 142 N.H. 192, 193 (1997) (denial of motion to amend affirmed where party was "given ample notice of the deficiency in his pleadings" yet failed to seek amendment until after dismissal). We agree with the trial court that the opportunities provided the petitioner in this case were sufficient.

■ Moreover, a contract claim and a claim under RSA chapter 541-B are each a far cry from a declaratory judgment action under the APA, from a claim under the Social Security Act, and from claims under the Takings Clauses and the Equal Protection Clauses of the State and Federal Constitutions. "A substantive amendment that introduces an entirely new cause of action, or calls for substantially different evidence, may properly be denied." *Bennett v. ITT Hartford Group*, 150 N.H. 753, 760 (2004).

Lastly, the petitioner appeals the denial of count II of its amended complaint. The petitioner argues that imposition of the 85th percentile cap on capital costs: (1) constituted a compensable taking under Part I, Article 12 of the New Hampshire Constitution; and (2) denied the petitioner equal protection of the laws in violation of Part I, Articles 2 and 6 of the New Hampshire Constitution. We conclude that these arguments lack merit and warrant no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed in part and reversed in part.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.