Department of Health and Human Services
No. 2005-856

APPEAL OF EMILY HUFF
(New Hampshire Department of Health and Human Services)

Argued: July 21, 2006
Opinion Issued: November 28, 2006

*Wiggin & Nourie, P.A.*, of Manchester (*Jan P. Myskowski* and *Jaime I. Gillis* on the brief, and *Mr. Myskowski* orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Suzan M. Lehmann*, senior assistant attorney general, on the brief and orally), for the respondent.

*John D. MacIntosh*, of Concord, and *John S. Kitchen*, of Laconia, on the brief, for the Office of Public Guardian, Tri-County Cap, Inc./Guardianship Services and Enhanced Life Options Group, as *amici curiae*.

*New Hampshire Legal Assistance*, of Portsmouth and Manchester (*Kay E. Drought* and *Laurel O'Connor* on the brief) and *Disability Rights Center*, of Concord (*Ronald K. Lospennato* on the brief), for Michael Bourgeois, Anita Handren, The Brain Injury Association of New Hampshire and the National Alliance of the Mentally Ill, as *amici curiae*.

*Ransmeier & Spellman, P.C.*, of Concord (*Tina L. Annis* on the brief), *Laboe Associates, PLLC*, of Concord (*John E. Laboe* on the brief), *McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Nelson A. Raust* on the brief), *Law Office of W. Michael Todd*, of New London (*W. Michael Todd* on the brief), and *Law Office of Ann N. Butenhof*, of Manchester (*Ann N. Butenhof* and *Judith L. Bomster* on the brief), for the Elder Law, Estate Planning and Probate Section of the New Hampshire Bar Association, as *amicus curiae*.

DUGGAN, J. The petitioner, Emily Huff, appeals a final decision of the New Hampshire Department of Health and Human Services Administrative Appeals Unit (AAU). The AAU concluded that special needs trust distributions function as income for purposes of Medicaid eligibility. We vacate and remand.

The following facts were found by the AAU or are uncontested. The petitioner is a disabled, young woman. On February 24, 2004, the petitioner's mother, who also serves as her legal guardian, applied on the petitioner's behalf for medical assistance under the Aid to the Permanently and Totally Disabled (APTD) program. As part of her application, the petitioner informed the department of health and human services (DHHS) that she was the beneficiary of a special needs trust, the Emily Huff Irrevocable Trust (the trust).

DHHS determined that the petitioner satisfied the APTD's categorical criteria and therefore sought to determine her financial eligibility. In order to ascertain the petitioner's financial eligibility, DHHS verified her monthly Social Security benefits and requested information concerning expenditures made by the trust. On May 7, 2004, the petitioner's mother, who also serves as trustee for the trust, provided a list of expenditures from the trust, which included payments for: (1) federal and state taxes; (2) attorney's fees; (3) a camp attended by the petitioner; (4) a bond required for the guardianship; and (5) a trip to Wisconsin. DHHS concluded that some of these expenditures constituted income for purposes of determining the petitioner's financial eligibility for medical assistance.

Based upon this conclusion, DHHS determined that the petitioner qualified as medically needy, but not categorically needy; therefore, she would have to meet a spend-down requirement before she could receive Medicaid.

From DHHS' initial determination, the petitioner appealed to the AAU. There, a hearings officer reversed DHHS' finding as to the amount of the spend-down that the petitioner would be required to meet, but upheld DHHS' determination that trust expenditures for the benefit, or on behalf, of the petitioner constituted income for purposes of Medicaid eligibility. The petitioner moved for reconsideration, which the hearings officer denied. The petitioner also moved to supplement the record with documents pertaining to the department's Medicaid eligibility policies in effect on January 1, 1972. The hearings officer denied this request as well, concluding that the petitioner had not followed the appropriate procedure to supplement the record or to introduce additional information as part of her motion for reconsideration.

On appeal, the petitioner argues that the AAU erred in counting trust expenditures as income for purposes of Medicaid eligibility and in denying her motion to supplement the record. The petitioner also argues that DHHS and the AAU violated her due process rights by engaging in improper rule-making and by relying on unwritten rules in adjudicating her application. DHHS counters that: (1) this matter may only be brought as a declaratory judgment action in Superior Court; and (2) the petitioner's income was lawfully and properly calculated.

Established in 1965 as Title XIX of the Social Security Act (SSA), the Medicaid program offers federal financial assistance to states that opt to reimburse certain costs of medical treatment for needy persons. *Schweiker v. Gray Panthers*, 453 U.S. 34, 36 (1981). States participating in the program must develop a plan that includes reasonable standards for determining an individual's eligibility for Medicaid and the extent of medical assistance to be provided. *Id.* "An individual is entitled to Medicaid if [s]he fulfills the criteria established by the State in which [s]he lives. State Medicaid plans must comply with requirements imposed both by the [SSA] itself and by the Secretary of Health and Human Services." *Id.* at 36-37 (citation omitted).

"As originally enacted, Medicaid required participating States to provide medical assistance to 'categorically needy' individuals who received cash payments under one of four welfare programs established elsewhere in the [SSA]." *Id.* at 37 (citation omitted). These programs included Old Age Assistance, Aid to Families with Dependent Children, Aid to the Blind, and Aid to the Permanently and Totally Disabled. *Id.* at 37 n.1. Congress deemed the individuals who participated in these four

programs to be especially deserving of public assistance. *Id.* at 37. States were also allowed to offer assistance to the "medically needy," meaning persons who could not pay for their medical expenses but who had "incomes too large to qualify for categorical assistance." *Id.*

In 1972, Congress replaced three of the four categorical assistance programs with a new program called Supplemental Security Income for the Aged, Blind, and Disabled (SSI). Under SSI, the Federal Government displaced the States by assuming responsibility for both funding payments and setting standards of need. In some States, the number of individuals eligible for SSI assistance was significantly larger than the number eligible under the earlier, state-run categorical need programs.

The expansion of general welfare accomplished by SSI portended increased Medicaid obligations for some States because Congress retained the requirement that all recipients of categorical welfare assistance—now SSI—were entitled to Medicaid. Congress feared that these States would withdraw from the cooperative Medicaid program rather than expand their Medicaid coverage in a manner commensurate with the expansion of categorical assistance. In order not to impose a substantial fiscal burden on these States or discourage them from participating, Congress offered what has become known as the § 209(b) option. Under it, States could elect to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972.

*Id.* at 38-39 (quotations and citations omitted). "Section 209(b) allowed states which had used more restrictive criteria than those subsequently enacted in SSI to continue using those more restrictive criteria after the 1974 effective date of the SSI Program." *Mowbray v. Kozlowski*, 914 F.2d 593, 596 (4th Cir. 1990). Nevertheless, if a state adopted section 209(b) and retained its more restrictive standards, it was required to provide benefits for the medically needy pursuant to the plan under which it operated on January 1, 1972, and which had been approved by the Federal Department of Health and Human Services. *Id.*; *see also* 42 U.S.C. § 1396a(f) (2000).

The United States District Court for the District of New Hampshire has held that "New Hampshire is a '§ 209(b) option' state, and therefore the eligibility standards for medical assistance are the same as those in effect in New Hampshire on January 1, 1972," *Duquette v. Dupuis*, 582 F. Supp. 1365, 1368 (D.N.H. 1984) (citation omitted), under the State's approved plan. *See* 42 U.S.C. § 1396a(f). Accordingly, if New Hampshire is a section 209(b) state, the petitioner's application must be evaluated against the

1972 eligibility standards for medical assistance in the State's approved plan because those standards define the nature and extent of the State's Medicaid obligations under section 209(b).

On the record in this case, the status of New Hampshire's Medicaid plan in 1972 is unclear. The AAU hearings officer concluded that "[t]he record contains no persuasive evidence as to the treatment of trust distributions in 1972 (special needs or otherwise) either in New Hampshire or under the then newly created SSI program. Accordingly, neither party presented sufficient evidence on this issue for it to be fairly addressed by the undersigned." At oral argument, DHHS conceded that it has not located a copy of the 1972 approved plan, but argued that such an approved plan (with provisions pertaining to special needs trusts) exists. DHHS also contended that the status and nature of New Hampshire's Medicaid plan in 1972 present questions of fact which we ought not decide in the first instance. The petitioner argued that no valid approved plan from 1972 exists and therefore New Hampshire is not a section 209(b) state. The petitioner also asserts that the state of the 1972 plan is primarily a question of law which we ought to reach here.

The interpretation of New Hampshire legislation in 1972 is a question of law. See Roloff v. Sullivan, 975 F.2d 333, 341 (7th Cir. 1992); Indiana Dep't of Pub. Welfare v. Payne, 622 N.E.2d 461, 465 (Ind. 1994). However, the instant case requires more than simply interpreting laws and regulations extant on a particular date. Rather, it requires determining whether the State had a Medicaid plan in place on January 1, 1972, and whether that plan was approved pursuant to 42 U.S.C. § 1396a(f). These types of determinations present questions of fact, which we decline to address in the first instance. See Boston & Maine R. R. v. State, 97 N.H. 380, 385 (1952).

■ The hearings officer did not make these types of findings. Having determined that she lacked sufficient evidence concerning the status and nature of New Hampshire's Medicaid plan in 1972, the hearings officer adjudicated the petitioner's application based upon New Hampshire Administrative Rule, He-W 654.04(b)(10) (eff. April 25, 1998), which provides, "Payments of income from a trust or similar legal device or payments from the corpus of a trust or a similar legal device made to, or for the benefit of, or on behalf of the individual shall be considered income to the individual." The hearings officer concluded that Rule 654.04(b)(10) "require[d] the Department to count disbursements from trusts made to the individual, on the individual's behalf or for the individual's benefit as income." The hearings officer then determined that the particular disbursements from the petitioner's special needs trust were income for

purposes of determining Medicaid financial eligibility. Even if we assume without deciding that the hearings officer correctly interpreted Rule 654.04(b)(10), absent a conclusion that New Hampshire is not a section 209(b) state and that Rule 654.04(b)(10) is consistent with current federal obligations, or a finding that the standard contained in Rule 654.04(b)(10) was part of the State's approved Medicaid plan in 1972, it was error for the hearings officer to rely and adjudicate this case based solely upon the rule.

We acknowledge that both sides have cited portions of regulations, rules, and manuals that allegedly existed in 1972. However, neither side has submitted the actual, approved plan from January 1, 1972. Given the importance of the legal issues before us, we decline, at this time and in the first instance, to assume that portions of policy manuals and other regulations constitute the approved plan. As the Connecticut Supreme Court observed in a case quite similar to this one, "proper consideration of the [petitioner's] claim must include an examination of the actual state plan in effect on January 1, 1972." *Matarazzo v. Rowe*, 623 A.2d 470, 475 (Conn. 1993), *overruled on other grounds by Ross v. Giardi*, 680 A.2d 113, 119 (Conn. 1996).

Therefore, this matter must be remanded so that the January 1, 1972 plan can be made a part of the record and considered in adjudicating the petitioner's claim. To the extent that the AAU determines that such a plan cannot here be produced, further proceedings may also be necessary. *See Matarazzo v. Aronson*, No. CV-91-0388251-S, 1993 WL 284819, at *1 (Conn. Super. Ct. July 23, 1993) (order remanding case to Connecticut Department of Income Maintenance).

Before concluding, we address one final point made by the AAU hearings officer because it is likely to arise on remand. *Figlioli v. R.J. Moreau Cos.*, 151 N.H. 618, 622 (2005). The hearings officer declined to look beyond Rule 654.04(b)(10), stating, "Given the restriction found in RSA 161:4, IV, the undersigned cannot decide the matter in violation of that rule." RSA 161:4, IV (2002) provides:

> The commissioner may, in accordance with the rules adopted by the director of personnel pursuant to RSA 541-A, appoint a hearings officer or hearings officers, as necessary, to preside over such hearings as are required to comply with federal and state statutes and federal or state rules or regulations. The decision of the officer shall not be contrary to rules adopted by the department of health and human services pursuant to RSA 541-A. The officer's decision shall be binding on all parties unless such decision is overturned on appeal.

Although the hearings officer was correct to note that RSA 161:4, IV, precludes her from issuing a decision contrary to departmental rules, the statute also indicates that she was to "preside over such hearings as are required to comply with federal and state statutes and federal or state rules or regulations." RSA 161:4, IV. Assuming without deciding that New Hampshire is a section 209(b) state, *see Duquette*, 582 F. Supp. at 1368, federal law—by application of 42 U.S.C. § 1396a(f)—required the petitioner's application to be adjudicated based upon the plan in effect on January 1, 1972. The hearings officer's decision is silent as to how she reconciled federal law obligations with the requirements imposed by state administrative rules. Absent a copy of the State's approved plan from 1972 or a decision from the hearings officer discussing these types of matters, it would be premature for us to resolve issues in this regard. We also note, for purposes of the remand, that New Hampshire's administrative rules currently contain a provision requiring compliance with 42 U.S.C. § 1396a, the statutory provision setting forth the section 209(b) option. *See* N.H. ADMIN. RULES, He-W 602.04(a) (eff. Oct. 22, 2005) ("The department shall provide medical assistance for the adult categories under the provisions of 42 USC 1396a."); *see also* 42 U.S.C. § 1396a(f).

Accordingly, we vacate the order of the AAU and remand this case for further proceedings. *See Matarazzo*, 623 A.2d at 475-76; *see also Matarazzo*, 1993 WL 284819, at *1.

*Vacated and remanded.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.