Merrimack
No. 2008-051

BEL AIR ASSOCIATES

v.

NEW HAMPSHIRE DEPARTMENT OF HEALTH
& Human Services

Argued: September 16, 2008
Opinion Issued: November 20, 2008

*Devine, Millimet & Branch, P.A.*, of Manchester (*Thomas Quarles* and *Shelagh C.N. Michaud* on the brief, and *Mr. Quarles* orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Laura E. B. Lombardi*, assistant attorney general, on the brief and orally), for the respondent.

BRODERICK, C.J. The petitioner, Bel Air Associates, appeals an order of the Superior Court (*Conboy*, J.) that the Medicaid provider agreement between it and the respondent, the New Hampshire Department of Health and Human Services (DHHS), does not constitute a contract. We reverse and remand.

Bel Air Associates (Bel Air) operates a state-licensed nursing home in Goffstown, providing care to Medicaid-eligible individuals. Medicaid is a joint federal-state program that provides health care services to certain low-income individuals. *See* 42 U.S.C. §§ 1396a *et seq.* (2000); RSA ch. 151-E (2005 & Supp. 2008). In New Hampshire, the Medicaid program receives half of its funding from the federal government and half from the State and its counties. The program is administered on the federal level by the Centers for Medicare and Medicaid Services, an agency within the United States Department of Health and Human Services, and on the state level by DHHS.

In order to participate in the Medicaid program, a nursing home must enter into a Medicaid provider agreement with the State. In 1985 and 1992, Bel Air entered into such agreements. We note that although Bel Air argues that both the 1985 and 1992 agreements are contracts, the trial court's

order was based upon only the 1992 agreement and we therefore limit our review to that agreement. The 1992 agreement has been indefinitely extended and is currently in force.

States participating in the Medicaid program have flexibility in establishing the payment methodologies to reimburse providers, provided that each state's rate-setting methodology complies with federal law. *See* 42 U.S.C. § 1396a(a)(13). DHHS establishes rates of reimbursement for providers of services to Medicaid-eligible persons through the state medical assistance program. *See* RSA 161:4, VI (2002). Under the program, nursing homes are reimbursed on the basis of per diem, per resident rates which are determined by totaling five rate components, including capital costs. These rates are set by DHHS twice per year.

In the mid-1990s, the State ordered that one of Bel Air's buildings be closed due to safety issues. *See Bel Air Assocs. v. N.H. Dep't of Health & Human Servs.*, 154 N.H. 228, 229 (2006). Bel Air received approval from the New Hampshire Health Services Planning and Review Board to build an addition to replace the nursing home beds lost due to the closure of the original building. *Id.* The renovations cost Bel Air approximately $2 million. At the time Bel Air undertook its new construction, the Medicaid rate-setting process allowed nursing homes to recover most capital costs. In 2002, however, DHHS instituted a cap on capital cost recoveries at the 85th percentile of allowable capital cost expenses. In 2003, Bel Air brought suit against DHHS, challenging its rate-setting methodology, specifically the 85th percentile cap on capital cost recovery, and DHHS' use of a budget neutrality factor in calculating reimbursement amounts. *Id.* at 231. We held that the capital cost cap and the budget neutrality factor were rules that were not adopted in accordance with the New Hampshire Administrative Procedure Act and therefore not valid against Bel Air. *Id.* at 235.

In 2006, relying upon RSA 491:8 (1997), Bel Air brought a claim for breach of contract against DHHS based upon the provisions of the 1992 Medicaid provider agreement. Bel Air moved for partial summary judgment on the basis that DHHS breached the implied terms of the provider agreement by: (1) failing to adopt the capital cost cap and budget neutrality factor in accordance with the Administrative Procedure Act; and (2) failing to comply with RSA 151-E:6, II, which requires that the State's nursing home reimbursement system fulfill an efficiency requirement. DHHS moved for summary judgment on the grounds that: (1) Bel Air's claims are barred by res judicata, the statute of limitations, laches and the doctrine of sovereign immunity; (2) Bel Air's claims fail because the Medicaid provider agreement is not a contract; and (3) if the provider agreement is a contract, the State has not breached it.

The trial court granted DHHS' motion for summary judgment and denied Bel Air's motion for partial summary judgment, ruling that the 1992 Medicaid provider agreement could not provide the basis for a breach of contract claim because it neither contained any substantive reimbursement provisions, nor placed any reciprocal obligation on DHHS to perform. The court found that the agreement was limited to establishing Bel Air's eligibility to receive payment from DHHS and did not establish an express contractual right to reimbursement. The court did not address any of the remaining issues raised by the parties.

On appeal Bel Air argues that the trial court erred because the Medicaid provider agreement contains "all of the indicia of a contract" and specifically refers to the New Hampshire Medicaid program and the rates set therein. DHHS argues that because the provider agreement "only place[s] obligations on the provider, with no reciprocal duties on [DHHS]," it does not constitute a contract. Rather, DHHS argues, the provider agreement is simply "an agreement by the provider to abide by statutory and regulatory requirements in order to be eligible to participate in the Medicaid program." Accordingly, DHHS maintains that "[a]ny reimbursement liability on the State is imposed by statute, rather than by the terms of the provider enrollment agreement."

"The court shall grant a motion for summary judgment pursuant to RSA 491:8-a if, after considering all the evidence in the light most favorable to the non-moving party, it finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Horse Pond Fish & Game Club v. Cormier*, 133 N.H. 648, 653 (1990). "In reviewing the trial court's initial grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. We review the trial court's application of the law to the facts *de novo.*" *Broom v. Continental Cas. Co.*, 152 N.H. 749, 752 (2005) (citations omitted).

■ ■ "Offer, acceptance, and consideration are essential to contract formation." *Behrens v. S.P. Constr. Co.*, 153 N.H. 498, 501 (2006). "A valid offer may propose the exchange of a promise for a performance. An offer may be accepted by commencement of performance. Consideration is present if there is either a benefit to the promisor or a detriment to the promisee. In addition, there must be a meeting of the minds in order to form a valid contract." *Chisholm v. Ultima Nashua Indus. Corp.*, 150 N.H. 141, 144-45 (2003) (citations, quotation, and ellipsis omitted). "For a meeting of the minds to occur, the parties must assent to the same

contractual terms. That is, the parties must have the same understanding of the terms of the contract and must manifest an intention, supported by adequate consideration, to be bound by the contract." *Durgin v. Pillsbury Lake Water Dist.*, 153 N.H. 818, 821 (2006) (citation, quotation, and brackets omitted).

The 1992 Medicaid provider agreement is titled "Agreement with Skilled Nursing and Intermediate Care Homes Participating Under New Hampshire Title XIX-Medical Assistance Program." The agreement was signed by both Bel Air and DHHS, and states that its purpose is "establishing eligibility for payment under the New Hampshire Title XIX Medical Assistance Program." It further states that Bel Air agrees "[t]o comply with such standards for participation as a Skilled Nursing Facility . . . and the making of payments under Title XIX of the Social Security Act as are prescribed by [DHHS]" and that Bel Air will "accept payments by [DHHS] as payment in full." The agreement is "binding upon [Bel Air] and [DHHS]." It "may be terminated by either party at any time following at least 30 days written notice of such intent to terminate" and requires that DHHS hold Bel Air harmless for "any violation of the Federal Privacy Act for any disclosure, public or otherwise, of patient's personal, financial, or medical records where such disclosure is made by [DHHS]."

■■ We agree with Bel Air that the 1992 provider agreement contains the essential elements of a contract — offer, acceptance, consideration and a meeting of the minds. "[T]he important consideration is not whether the document is a paradigm of draftsmanship, but whether its general structure and specific provisions are reasonably clear." *Chisholm*, 150 N.H. at 145 (quotations omitted). We hold that it is reasonably clear that pursuant to the 1992 provider agreement, Bel Air and DHHS agreed that Bel Air would provide nursing home services to Medicaid-eligible individuals in exchange for reimbursement by DHHS as required by the provisions of Title XIX of the Social Security Act, specifically incorporated by reference in the agreement. *See Caritas Services v. State, DSHS*, 869 P.2d 28, 36 (Wash. 1994) (contractual right to reimbursement no different from statutory right if statute incorporated by reference in contract); *accord Midwest Division-OPRMC v. Dept. Soc. Serv.*, 241 S.W.3d 371, 380 (Mo. Ct. App. 2007) (provider agreements are contracts); *Ohio Hosp. Ass'n v. Ohio D.H.S.*, 579 N.E.2d 695, 700 (Ohio 1991) (Medicaid reimbursement claims are contracts), *cert. denied*, 503 U.S. 940 (1992); *United States v. Upper Valley Clinic Hospital*, 615 F.2d 302, 306 (5th Cir. 1980) (action to recover overpayments to Medicaid provider "sounds in contract"); *Green v. Cashman*, 605 F.2d 945, 946 (6th Cir. 1979) (provider agreement is contract for purposes of determining provider rights); *Briarcliff Haven, Inc. v.*

*Department of Hum. Res. GA.*, 403 F. Supp. 1355, 1358 (N.D. Ga. 1975) (provider agreement is best construed as business contract between state and Medicaid provider).

We reverse and remand for further proceedings consistent with this opinion. We do not address the State's argument that the trial court "reached the correct result in granting summary judgment in favor of [DHHS] because Bel Air's contract claim is barred by res judicata and the statute of limitations." The trial court may consider these issues on remand.

*Reversed and remanded.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.