Merrimack
No. 2009-091

MEGAN SMITH

v.

CITY OF FRANKLIN

Argued: September 24, 2009
Opinion Issued: January 14, 2010

*New Hampshire Legal Assistance*, of Concord (*Daniel Feltes & a.* on the brief, and *Mr. Feltes* orally), for the plaintiff.

*Wescott, Dyer, Fitzgerald & Nichols, P.A.*, of Laconia (*Paul T. Fitzgerald* on the brief and orally), for the defendant.

CONBOY, J. The plaintiff, Megan Smith, appeals an order of the Superior Court (*Mangones*, J.) upholding the denial of her request for financial assistance by the defendant, City of Franklin (City). The trial court ruled that the City correctly interpreted RSA 167:27 (2002) to preclude the plaintiff's eligibility for local financial assistance because she receives Medicaid through the Aid to the Permanently and Totally Disabled (Medicaid-APTD) program. We reverse and remand.

The following facts are undisputed. The plaintiff is a resident of Franklin. In July 2007, the plaintiff's monthly household income consisted of federal Social Security Disability Insurance benefits of $777, and federal Supplemental Security Income totaling $177, comprised of $88.50 for the plaintiff and $88.50 for her husband. Throughout July of 2007, she also received medical assistance through the Medicaid-APTD program, pursuant to RSA 167:6, VII. She did not, however, receive direct financial assistance payments from the State.

On July 2, 2007, the plaintiff applied to the City for financial assistance with her electric and gas utility bills under the general assistance provisions of RSA chapter 165. The City denied the application on July 13, stating that the plaintiff was ineligible for general assistance under RSA 167:27. The plaintiff reapplied for financial assistance with her electric and gas utility bills on July 26. On July 30, 2007, the City again denied her application on the same ground. The plaintiff requested a "Fair Hearing"

concerning the City's July 30 decision. Following a hearing, the hearings officer upheld the City's July 30 decision.

The plaintiff sought review in the superior court, where she argued that RSA 167:27 does not preclude her eligibility for local assistance because the aid she receives through the Medicaid-APTD program constitutes "medical assistance," and not "aid to the permanently and totally disabled" as it is defined under New Hampshire law. She distinguished the Medicaid benefits she receives from the "cash assistance" programs that RSA 167:27 declares incompatible with local general assistance.

The City asserted that RSA 167:27 makes no distinction between "medically needy" and "categorically needy" recipients of "aid to the permanently and totally disabled," and that the plaintiff, whom it acknowledged is medically needy, receives "aid to the permanently and totally disabled" and is therefore precluded from local assistance under the plain language of the statute. The trial court adopted the City's position. This appeal followed.

"We review the trial court's statutory interpretation *de novo*." *Petition of State of N.H. (State v. Milner)*, 159 N.H. 456, 457 (2009). "In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." *Id.* "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Id.* at 457.

> We begin by examining the language of the statute and ascribing the plain and ordinary meanings to the words the legislature used. Although we look to the plain and ordinary meaning of the statutory language to determine legislative intent, we will not read words or phrases in isolation, but in the context of the entire statute. When the language of a statute is plain and unambiguous, we do not look beyond it for further indications of legislative intent. We review legislative history to aid our analysis where the statutory language is ambiguous or subject to more than one reasonable interpretation. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result.

*Franklin v. Town of Newport*, 151 N.H. 508, 509-10 (2004) (citations omitted).

RSA 167:27 provides, in relevant part:

> No person receiving old age assistance or aid to the permanently and totally disabled under this chapter or RSA 161 shall at the

same time receive any other relief from the state, or from any political subdivision thereof, *except for medical and surgical assistance*, and the acceptance of such relief shall operate as a revocation of old age assistance or aid to the permanently and totally disabled.

(Emphasis added.) RSA 167:5, I (2002) defines the relevant terms: "assistance granted to the needy permanently and totally disabled shall be designated as aid to the permanently and totally disabled" (NH-APTD), while "[m]edical care and services provided to eligible individuals shall be designated as medical assistance." We must give effect to all words in a statute, and presume that the legislature did not enact legislation with superfluous or redundant words. *Winnacunnet Coop. Sch. Dist. v. Town of Seabrook*, 148 N.H. 519, 525-26 (2002).

■ Giving effect to all words in the statutes, RSA 167:27 and RSA 167:5 read together establish that NH-APTD and "medical assistance" are two separate and distinct programs. NH-APTD and "medical assistance" also have different standards of eligibility under RSA 167:6, VI (delimiting eligibility for NH-APTD, in large part by reference to the Social Security Act), and under RSA 167:6, VII (setting eligibility standards for "medical assistance"). Moreover, RSA 167:27 specifically permits "medical and surgical assistance" as the only type of relief that may be received in conjunction with NH-APTD. Thus, while NH-APTD is not compatible with local financial assistance, medical assistance is compatible. We must therefore determine whether the plaintiff's coverage under the Medicaid-APTD program constitutes "medical assistance" under New Hampshire law, or is subsumed under NH-APTD.

■ In analyzing this issue, we recognize the potential confusion engendered by the use of the phrase "aid to the permanently and totally disabled" in both federal and state law. However, the phrase has different meanings under the two statutory schemes. Medicaid is the program that "offers federal financial assistance to states that opt to reimburse certain costs of medical treatment for needy persons." *Appeal of Huff*, 154 N.H. 414, 416 (2006); *see also Wisc. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479 (2002) ("Each participating State develops a plan containing reasonable standards . . . for determining eligibility for and the extent of medical assistance within boundaries set by the Medicaid statute and the Secretary of Health and Human Services." (quotation omitted)); *Bel Air Assocs. v. N.H. Dep't of Health & Human Servs.*, 158 N.H. 104, 106 (2008) ("DHHS establishes rates of reimbursement for providers of services to Medicaid-eligible persons through the state medical assistance

program."). Within the federal statute itself, Medicaid is often referred to interchangeably with "medical assistance." *See, e.g.,* 42 U.S.C. § 1396a (e)(13)(F)(v)(V) (defining "State Medicaid Plan"); 42 U.S.C. § 1396a (e)(13)(E)(iii)-(iv) (referring to a federal statutory penalty "for payments made under the State Medicaid plan with respect to ineligible individuals and families that are determined to exceed the error rate permitted" and defining "error rate" as "the rate of erroneous excess payments for medical assistance").

■ While, therefore, Medicaid generally constitutes medical assistance, we must explore the nature of the Medicaid-APTD program. "As originally enacted, Medicaid required participating States to provide medical assistance to 'categorically needy' individuals who received cash payments under one of four welfare programs established elsewhere in the [Social Security Act]," including aid to the permanently and totally disabled. *Appeal of Huff,* 154 N.H. at 416 (citations omitted). "Congress deemed the individuals who participated in these four programs to be especially deserving of public assistance. States were also allowed to offer assistance to the 'medically needy,' meaning persons who could not pay for their medical expenses but who had incomes too large to qualify for categorical assistance." *Id.* at 416-17 (quotations and citations omitted).

In 1972, Congress replaced three of the four categorical assistance programs with a new program called Supplemental Security Income for the Aged, Blind, and Disabled (SSI). Under SSI, the Federal Government displaced the States by assuming responsibility for both funding payments and setting standards of need. In some States, the number of individuals eligible for SSI assistance was significantly larger than the number eligible under the earlier, state-run categorical need programs.

The expansion of general welfare accomplished by SSI portended increased Medicaid obligations for some States because Congress retained the requirement that all recipients of categorical welfare assistance — now SSI — were entitled to Medicaid. Congress feared that these States would withdraw from the cooperative Medicaid program rather than expand their Medicaid coverage in a manner commensurate with the expansion of categorical assistance. In order not to impose a substantial fiscal burden on these States or discourage them from participating, Congress offered what has become known as the § 209(b) option. Under it, States could elect to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972.

*Id.* at 417 (quotation omitted). New Hampshire is a § 209(b) state, and is therefore required to provide Medicaid only to those who would have been eligible under the pre-1972 plan. *Id.*; *see also Schweiker v. Gray Panthers*, 453 U.S. 34, 39 n.6 (1981). Accordingly, "[r]ecipients of federal supplemental security income (SSI) are eligible for Medicaid in New Hampshire only if they also qualify for one of the three adult assistance programs" in place prior to 1972 that provided assistance for the blind, the aged, and the permanently and totally disabled. *Baker v. City of Concord*, 916 F.2d 744, 745 (1st Cir. 1990); *see also Bryson v. Shumway*, 308 F.3d 79, 82 (1st Cir. 2002) ("Not everyone is eligible for Medicaid-funded treatment; to be eligible, an individual must have limited resources and must fit into an eligibility category. For disabled adults, the most common route to eligibility is receiving Supplemental Security Income (SSI) on the basis of disability."). The Medicaid-APTD program thus provides Medicaid benefits to people who qualify by fitting within the pre-1972 federal disability criteria. Here, because the plaintiff meets the criteria for Medicaid-APTD by virtue of her disability, she receives medical assistance.

New Hampshire's "medical assistance" statute, RSA 167:6, VII (Supp. 2009), allows medical assistance to people who qualify under federal law, even if they are not "categorically needy" under New Hampshire law. That statute provides in full:

> For purposes hereof, a person shall be eligible for medical assistance as categorically needy or as medically needy. A person shall be eligible as categorically needy if he receives financial assistance under RSA 167:6, I, IV, V or VI, or is otherwise eligible to receive such assistance but does not. A person shall be eligible as medically needy if he meets the categorical, age, and technical requirements under RSA 167:6, I, IV, V or VI, and if his income and assets meet the standards as prescribed for the medically needy program. A person shall also be eligible as categorically needy or as medically needy who is eligible for medical assistance pursuant to the mandates of federal law or regulation or pursuant to optional state coverage groups which are allowed by federal regulation and defined by the commissioner of the department of health and human services in accordance with rules adopted under RSA 541-A, but who does not receive assistance or would not be otherwise eligible to receive assistance under paragraph I, IV, V, or VI of this section.

Thus, New Hampshire's statutory treatment of "medical assistance" implicitly recognizes the qualification criteria for Medicaid in New Hampshire.

The parties agree that the plaintiff has qualified for Medicaid-APTD as "medically needy." Specifically, she is "eligible as medically needy" because she meets the categorical, age, and technical requirements under RSA 167:6, VI; that is, she is "disabled as defined in the federal Social Security Act, Titles II and XVI and the regulations adopted under such act," RSA 167:6, VI, and her "income and assets meet the standards as prescribed for the medically needy program," RSA 167:6, VII.

We next turn to the question of whether the Medicaid-APTD program is synonymous with the NH-APTD financial assistance program for the purpose of evaluating the plaintiff's eligibility for the requested local assistance. "New Hampshire has two systems of public welfare: 'categorical assistance programs,' 42 U.S.C. § 601 et seq. and 42 U.S.C. § 801 et seq., and the 'general assistance program,' NH RSA 165:1." *Baker-Chaput v. Cammett*, 406 F. Supp. 1134, 1137 (D.N.H. 1976). "The categorical assistance programs are federally funded and administered by a central state agency, whereas the general assistance program is locally funded and administered." *Id.* "The State of New Hampshire administers various public assistance programs, including old age assistance (OAA), aid to the needy blind (ANB), aid to families with dependent children (AFDC), and [NH-]APTD." *Baker*, 916 F.2d at 745.

> Prior to 1986, the towns, cities, counties, and State all contributed to funding the [NH-]APTD program. *See* RSA 167:20 (1977) . . . . [L]egislation taking effect on January 1 of that year exempted the cities and towns from direct fiscal obligations in respect to [NH-]APTD and OAA, leaving the counties and the State to bear the immediate fiscal burden of these programs. The municipalities still provided indirect support to [NH-]APTD and OAA, however, in that the wellspring of the counties' revenue stream is the local property tax collected by the cities and towns. *See* RSA 29 (1977 & Supp. 1989).

*Id.* at 746. "It is notable that, alone among New Hampshire's assortment of welfare benefit models, [NH-]APTD and OAA tap into a unique county-state funding source." *Id.* at 749. On the other hand, "Medicaid is a joint federal-state program that provides health care services to certain low-income individuals. *See* 42 U.S.C. §§ 1396a *et seq.* (2000); RSA ch. 151-E (2005 & Supp. 2008)." *Bel Air*, 158 N.H. at 105. "In New Hampshire, the Medicaid program receives half of its funding from the federal government and half from the State and its counties." *Id.* "The program is administered on the federal level by the Centers for Medicare and Medicaid Services, an agency within the United States Department of Health and Human Services, and on the state level by [the New Hampshire Department of

Health and Human Services]." *Id.* The NH-APTD program and Medicaid, including the Medicaid-APTD program, are two separate entities, funded from different sources.

■ Our analysis to this point has established the following: (1) NH-APTD does not include medical assistance; (2) Medicaid, including the Medicaid-APTD program, provides medical assistance; and (3) Medicaid-APTD is not the same as NH-APTD. Based upon this analytical framework, we now address whether the plaintiff's Medicaid coverage through the Medicaid-APTD program is compatible with local aid. We have previously held, "The enactment of the State Medicaid program (RSA ch. 167) did not repeal or amend the [local assistance] obligation of counties and towns under RSA chs. 165 and 166." *Hall v. County of Hillsborough*, 122 N.H. 448, 452 (1982). This holding is supported by the language of RSA chapter 167, which treats medical assistance differently from New Hampshire's other aid programs, including NH-APTD. *See* RSA 167:3-b (2002) ("The provisions of [preceding sections] do not apply to the administration of medical assistance."); RSA 167:5 (defining "adult programs" to include old age assistance, aid to the needy blind, and NH-APTD, and defining medical assistance separately); RSA 167:6 (2002 & Supp. 2009) (delimiting eligibility criteria for each of the chapter's aid programs — old age assistance, aid to the needy blind, aid to families with dependent children, and NH-APTD — which are all mutually exclusive, and for medical assistance, which is compatible with all four programs). The section at issue here, RSA 167:27, explicitly provides that medical assistance is compatible with NH-APTD and old age assistance, in contrast to any other type of state relief.

■ We note that the First Circuit Court of Appeals held in *Baker* that NH-APTD is incompatible with local aid under RSA 167:27, and upheld RSA 167:27 as a constitutional legislative prioritization of welfare programs. *Baker*, 916 F.2d at 755. The court reasoned that "the New Hampshire legislature could reasonably have concluded that town welfare [under RSA 165:1] be restricted so as to exclude individuals already receiving relief from programs partially funded by the cities and towns," specifically, NH-APTD, because "the contribution provided by the cities and towns to [NH-]APTD met the 'fair share' financial obligation of local government to those receiving such aid." *Id.* at 750. The court also pointed out the reasonableness of disallowing short-term local aid in conjunction with old age assistance or NH-APTD based upon "durational differences stemming from the likely persistency of need," specifically, the generally longer duration of recipients' need for old age assistance or [NH-]APTD welfare as contrasted to aid to the blind (who "have the potential to develop

skills in order to support themselves") or aid to families with dependent children (who "grow up and cease being dependent"). *Id.* at 750-51.

■■ These two rationales support the legislature's determination that medical assistance, including Medicaid, is compatible with other forms of state assistance. The public funding burden that has historically "been shared in varying degrees by federal, state, and local agencies" is equally divided between the state and federal entities in the case of Medicaid, and county and municipal funds thus have not been burdened. *Id.* at 749. In terms of duration of need, medical payments are often limited to payments for treatment of discrete ailments, rather than on-going payments for long-term support. Precedent and the statutory scheme therefore lead us to conclude that RSA 167:27 does not bar receipt of local aid based upon receipt of Medicaid through the Medicaid-APTD program.

■ Accordingly, the plaintiff may apply for financial aid pursuant to RSA 165:1, I, which provides, "Whenever a person in any town is poor and unable to support himself, he shall be relieved and maintained by the overseers of public welfare of such town, whether or not he has residence there." In interpreting this broadly worded statute, we have held "that the statute is to be administered to promote its humanitarian purpose." *Hall*, 122 N.H. at 451 (quotation omitted). "Financial need and an inability to support one's self are the sole criteria for eligibility." *Baker-Chaput*, 406 F. Supp. at 1137. Because these are factual determinations, which we decline to address in the first instance, we remand to the superior court with instructions to remand to the City for evaluation of the plaintiff's application for local assistance.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.