No. 109,573

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PATRICK J. MUIR,
*Appellant*,

v.

KANSAS HEALTH POLICY AUTHORITY,
*Appellee.*

SYLLABUS BY THE COURT

The Kansas Health Policy Authority did not erroneously interpret the law or act arbitrarily, capriciously, or unreasonably when it calculated a Medicaid recipient's available income that could be used to pay the cost of medical care without first deducting amounts that the person had been ordered to pay in child support and maintenance.

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed September 5, 2014. Affirmed.

*Timothy J. Muir, Kent M. Dryer*, and *Matthew Dykstra*, of Muir Law Firm, LLC, of Overland Park, for appellant.

*Brian M. Vazquez*, of Kansas Department of Health and Environment, for appellee.

Before LEBEN, P.J., GREEN and HILL, JJ.

LEBEN, J.: Patrick Muir is an adult resident of a long-term-care facility, and he qualifies for Kansas Medicaid assistance. Under state and federal Medicaid law, a certain amount of his monthly income from disability payments is protected income that he can

keep, but the rest of his income is deemed "available income" that he must pay toward his care before Medicaid will pay the rest of the costs. See 42 U.S.C. § 1396a(a)(17) (2006); K.A.R. 30-6-53(3) (2009).

Muir challenges a state agency ruling that he may not take part of his disability income and use it to pay child support for his two children and maintenance to his former spouse. Instead, the agency determined that his child support and maintenance obligations did not make some funds exempt from the otherwise "available income" that he must pay toward his care. He argues that the agency wrongly interpreted the law and acted arbitrarily.

But closely related federal regulations specifically provide that amounts owed for child support or maintenance aren't excluded when calculating a person's available income in the form of Social Security Supplemental Security Income (SSI) payments. The federal government provided a rationale for that rule: otherwise, the SSI payments made by the government would "subsidize child support obligations or other debts, which is not its purpose as a program designed to meet the subsistence needs of its claimants only." 56 Fed. Reg. 3209-11 (January 29, 1991).

The State of Kansas may apply the same rationale to its Medicaid program, making sure that it provides only the required assistance to the Medicaid beneficiary rather than also subsidizing—directly or indirectly—the beneficiary's child-support or maintenance payments. The state agency in Muir's case did not misinterpret any statute or regulation; nor did it act arbitrarily. We therefore affirm the district court, which upheld the agency's ruling.

FACTUAL AND PROCEDURAL BACKGROUND

We begin our review with the background facts necessary to our decision. Muir became a quadriplegic with no feeling below his chest after a surgery in 2002 that attempted to correct a serious malformation in his spine. At the time, Muir was in his late 30's and lived with his wife and two children.

He continued to live at home with his family until August 2009, when he moved into a long-term-care facility. He receives $2,244 per month in Social Security disability payments and $2,323.17 from a private disability-insurance policy, giving him a total income of $4,567.17 per month.

Two additional events set the stage for the legal dispute now before us. First, Muir's wife filed for divorce in March 2010. The parties settled the case in May 2010, agreeing that Muir would pay $598 per month in maintenance for 121 months and that he would pay $1,430 per month in child support (the children were then 12 and 10). At the time of the divorce, Muir's ex-wife was also receiving $1,120 per month in Social Security disability payments for the children.

Second, Muir filed an application in May 2010 for Medicaid assistance for the expense of his long-term care. The Kansas Health Policy Authority, which administered the state's Medicaid program at that time, approved Muir's application in July 2010. But it concluded that virtually all of his monthly income would be considered "available income" that had to be paid toward his care expenses before Medicaid would cover the remaining costs. No adjustment was made based on Muir's child-support or maintenance obligations.

Muir appealed that agency determination—first to an administrative hearing officer and then to the Kansas Health Policy Authority State Appeals Committee. Muir

contended that he should be able to use part of his disability-income payments to pay his child-support and maintenance obligations, rather than having that money considered "available income" that had to be spent on his long-term care. Both the hearing officer and the appeals committee rejected Muir's argument.

Muir then filed a petition for review in the Johnson County District Court. That court also ruled against Muir, concluding that the final agency determination (by the appeals committee) was neither contrary to law nor arbitrary and capricious. The court noted that Muir had also challenged the state agency's position on the constitutional basis that it denied unmarried disabled people equal protection when compared to those who were married. But the court concluded that Muir had not provided an adequate legal argument to support his equal-protection challenge, so the court concluded that he had waived that claim.

Muir has appealed to this court. We review the decisions of an administrative agency under the Kansas Judicial Review Act, K.S.A. 2013 Supp. 77-601 *et seq*. The party challenging the agency's ruling has the burden to show that the agency's action was wrong, K.S.A. 2013 Supp. 77-621(a)(1), but courts may grant relief on either of two reasons argued here by Muir: if the agency has made an error in interpreting or applying the law, K.S.A. 2013 Supp. 77-621(c)(4), or if the agency's decision is arbitrary, capricious, or "otherwise unreasonable." K.S.A. 2013 Supp. 77-621(c)(8). In a case like this one, in which no evidence was independently heard by the district court, we must review these issues without any required deference to the district court's decision. See *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010).

Before we proceed with our discussion of Muir's appeal, we should note some matters that do not affect our decision but are worthy of mention.

4

First, we are determining whether the Kansas Health Policy Authority acted properly when it denied Muir's claim in April 2011. Since that time, the agency with authority over Medicaid matters has changed to the Kansas Department of Health and Environment. Neither party has filed a motion to substitute the Kansas Department of Health and Environment as the proper party on appeal, and we simply refer to the agency or the agency decision in the remainder of our opinion. We also note that a manual we will refer to later in this opinion was originally developed by the Kansas Department of Social and Rehabilitation Services, which had authority over Medicaid before the Kansas Health Policy Authority. The changes in the agency handling Medicaid matters have no impact on the merits of either party's position.

Second, neither party included the manual in our record on appeal. While the current manual is available on a state website, we have relied primarily on the excerpts that were contained in the parties' briefs and in the agency's decision. The parties agreed at oral argument that these materials accurately reflected the manual provisions in effect at the time of the agency decision.

Third, we conclude that we need not decide whether a Kansas court should give deference to the provisions of the manual. Normally, a guidance document adopted by a Kansas agency without formal rulemaking procedures isn't given special recognition. *L.E.H. v. Kansas Dept. of SRS*, 44 Kan. App. 2d 798, 805-06, 241 P.3d 167 (2010). A state Medicaid manual, however, usually must be approved by the federal Department of Health and Human Services. See 42 C.F.R. 430.10; *National Federation of Independent Business v. Sebelius*, 567 U.S. ___, 132 S. Ct. 2566, 2581, 183 L. Ed. 2d 450 (2012). Accordingly, some level of deference is generally given to a state agency's interpretation of federal Medicaid laws as contained in a federally approved manual or guidance document. *E.g.*, *Perry v. Dowling*, 95 F.3d 231, 236-37 (2d Cir. 1996); *Ritter v. Cecil Cty. Office of Hous. & Cmty. Dev.*, 33 F.3d 323, 327-28 (4th Cir. 1994). For matters relating only to the interpretation of state laws, however, Kansas courts generally give *no*

deference to state agency interpretations. See *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013). We need not determine what amount of deference, if any, should be given here to the agency manual at issue. Both sides have cited to it and contended its provisions should be followed, but as we explain below, Muir has not pointed to any provision in the manual that actually provides that amounts a Medicaid recipient is ordered to pay in child support or maintenance should be deducted from the income the person must apply to payment for medical care.

Last, the Kansas Medicaid regulations, which have the force and effect of law, were recently revoked and replaced. See K.S.A. 77-425; *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 320, 291 P.3d 1056 (2013); 32 Kan. Reg. 1376-1415 (November 21, 2013). The parties in our case have not suggested that any laws apply to Muir's case other than those in effect when the Kansas Health Policy Authority made its decision. We have limited our consideration to the laws in effect at that time.

ANALYSIS

The underlying facts to the legal dispute before us are straightforward, as is the ultimate question we must answer. Muir is a quadriplegic in a long-term-care facility, and he receives $4,567.17 per month in disability payments. He owes $2,028 in maintenance and child support, but since Medicaid is paying any costs of his long-term care that he cannot, he must spend all of his "available income" on his care. The ultimate question— as a practical matter—is whether he can use some of his disability income to pay maintenance and child support or whether virtually all of his disability income must be treated as available income and paid toward the cost of his care.

To answer that question, we must consider the various statutes, regulations, and agency guidance documents that govern the Kansas Medicaid program.

6

Congress created the Medicaid program in 1965 to provide federal financial assistance to states that reimburse the costs of medical treatment for their needy citizens. See *Harris v. McRae*, 448 U.S. 297, 301, 100 S. Ct. 2671, 65 L. Ed. 2d 784, *reh. denied* 448 U.S. 917 (1980). Once a state chooses to participate in Medicaid, it must comply with various federal statutes and regulations, and it must submit a written plan to the federal government detailing how it will use its funds. See *Houghton ex rel. Houghton v. Reinertson*, 382 F.3d 1162, 1164-65 (10th Cir. 2004). State plans are subject to approval by the federal Secretary of Health and Human Services, 42 C.F.R. 430.10, but subject to that approval, states enact and administer their own Medicaid programs within established limits. See *Sebelius*, 132 S. Ct. at 2581; *Hodel v. Virginia Surface Mining & Recl. Assn.*, 452 U.S. 264, 289, 101 S. Ct. 2352, 69 L. Ed. 2d 1 (1981). In sum, a state's Medicaid program is a cooperative federal-state program, governed by both federal and state law. See *Shakhnes v. Berlin*, 689 F.3d 244, 247 (2d Cir. 2012), *cert. denied* 133 S. Ct. 1808 (2013).

The state agency relied upon a manual—called the Kansas Economic and Employment Support Manual—in making its decision. The manual describes state policies on Medicaid eligibility. Section 8150 of the manual provides that all income is counted unless another provision exempts it. Other than the $62-per-month allowance recognized by the agency for a nursing-home resident, the agency found no other exemption that applied. Neither party has cited a provision in a statute, regulation, or the manual that exempts amounts a court has ordered a person to pay for maintenance or child support when the person is divorced and the children no longer live in that person's home.

So there is a basis in the applicable administrative manual supporting the agency's view. Two regulations also support that conclusion: K.A.R. 30-6-111 and K.A.R. 30-6-113 provide that all unearned income is considered as available income unless it is otherwise specifically exempted. But our task in this appeal is guided by the Kansas

7

Judicial Review Act, which provides that Muir has the burden to show that the agency's determination was wrong. K.S.A. 2013 Supp. 77-621(a)(1). So we turn now to the specific arguments Muir has put forth on appeal to support his claim that the agency erred.

Muir's first argument is that the agency erroneously interpreted the law. For this argument, he cites K.S.A. 39-790 and section 6100(3) of the agency manual.

K.S.A. 39-790, adopted in 1988, supports his position. That statute provided that "[f]or division of income purposes, a court-ordered child support obligation or a family maintenance allowance to a prior spouse or spouses shall not be considered available income." But the operation of K.S.A. 39-790 appears to have been suspended by the legislature's 1989 adoption of K.S.A. 39-791. It authorizes the suspension of K.S.A. 39-790 upon the receipt by Kansas of payments under Title XIX of the federal Social Security Act as authorized by the federal Medicare Catastrophic Coverage Act of 1988. After such payments were first received, K.S.A. 39-791 provided that K.S.A. 39-790 would remain suspended unless payments under Title XIX ended. Muir has the burden to show that the agency erred, so he would have to demonstrate that the suspension of K.S.A. 39-790 has ended. He has not provided any basis for us to conclude that the suspension has ended, and a suspended statute is of no effect.

Section 6100(3) of the manual provides that income is "considered available when a client has a legal interest therein and the legal ability to make it available." He contends that he doesn't have the legal ability to make available the sums he has been ordered to pay out for support. But Muir's ex-wife and children have not been granted a legal interest in these specific funds. So the manual provision doesn't require that the funds be excluded from Muir's available income.

8

The decision we reach is supported by the Kansas Supreme Court's 1995 decision in *Ussery v. Kansas Dept. of SRS*, 258 Kan. 187, 899 P.2d 461 (1995). That case differed from Muir's in that the manual we've noted had not yet been prepared, so the court relied only on state and federal statutes and regulations. The court approved the agency determination that a Medicaid recipient's available income would not be reduced for court-ordered maintenance to the person's ex-spouse. 258 Kan. 187, Syl. ¶ 7.

Muir has not shown that the agency erroneously interpreted or applied the law.

Muir's second argument is that the agency acted arbitrarily or capriciously when it failed to exclude the amounts he had been ordered to pay in child support and maintenance from the portion of his income available for medical expenses. We already know that Muir has not shown that the agency's decision is contrary to law. But now we must determine whether there is some basic and serious unfairness here that can be judicially remedied. To consider that possibility, we must place the dispute in a larger context.

In Kansas, a person may qualify for Medicaid in two different ways. Some qualify primarily based on their status as a recipient of Supplemental Security Income (SSI) benefits for a disability. See K.A.R. 30-6-65(a)(1), (2) (2009). Others qualify based on a more detailed review of their medical needs and indigency. See K.A.R. 30-6-94 (2009).

For those who qualify based on their receipt of SSI disability benefits, federal regulations provide that "available income" includes any amounts paid to satisfy maintenance or child-support obligations. See 20 C.F.R. 416.1102; 20 C.F.R. 416.1123(b)(2); 56 Fed. Reg. 3209-11 (January 29, 1991). When these regulations were adopted, the Secretary of Health and Human Services explained the rationale for them: "The effect of not considering such funds as income is to have the SSI program subsidize

child support obligations or other debts, which is not its purpose as a program designed to meet the subsistence needs of its claimants only." 56 Fed. Reg. 3209.

Our record does not tell us how Muir qualified for state Medicaid benefits. At oral argument, both parties agreed that Muir qualified for Kansas Medicaid based on the separate provisions for the medically needy. Accordingly, the federal regulations we have noted do not apply to him.

But the underlying situations are obviously quite similar. No matter how a person qualifies for Medicaid payments, he or she qualifies based on need; the receipt of SSI payments is simply a proxy indicator. In either case, the resources available to pay Medicaid benefits remain limited, and allowing an exemption from "available income" for amounts that would be paid to support others would have the Medicaid program subsidize those support payments.

Whether an agency's decision is arbitrary or capricious tests "the reasonableness of the [agency's] exercise of discretion in reaching the determination" at issue. *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 365, 770 P.2d 423 (1989); *Wheatland Electric Cooperative v. Polansky*, 46 Kan. App. 2d 746, 757, 265 P.3d 1194 (2011), *rev. denied* 297 Kan. 1257 (2013). In a closely related context, *i.e.*, where a person has qualified for Medicaid payments because he or she is receiving SSI payments, federal regulations would provide the same outcome that the agency reached here in Muir's case. We find nothing arbitrary, capricious, or otherwise unreasonable when the agency applies the same rule to those who receive Medicaid benefits based on separate tests for being medically needy.

We note too that federal courts have approved the regulations that apply to Medicaid recipients who automatically qualify based on receipt of SSI payments, including the federal government's requirement that states include support payments as

10

available income for Medicaid purposes. See *Himes v. Shalala*, 999 F.2d 684, 690-91 (2d Cir. 1993) (upholding the Secretary of Health and Human Service's disapproval of a New York Medicaid plan that would have deducted child support from available income); *Peura v. Mala*, 977 F.2d 484, 490 (9th Cir. 1992) (holding that state properly counted court-ordered child-support payments as available income for Medicaid purposes); *Emerson v. Steffen*, 959 F.2d 119, 121-22 (8th Cir. 1992) (upholding Minnesota Medicaid plan that included child-support payments as available income for Medicaid purposes). Similarly, several state courts have held that court-ordered support is included as available income for Medicaid purposes. *E.g.*, *A.C. v. E.C.*, 68 A.3d 265, 267-78 (Del. Fam. 2013); *Clark v. Iowa Dept. of Human Services*, 513 N.W.2d 710, 711 (Iowa 1994); *Estate of G.E. v. Division of Medical Assistance & Health Services*, 271 N.J. Super. 229, 240, 638 A.2d 833 (1994). These cases also support our conclusion that there was nothing arbitrary, capricious, or otherwise unreasonable about the agency's decision in Muir's case.

Muir also argues that the agency decision is arbitrary based on section 6220(4)(d) of the agency manual, which provides that "[s]upport and alimony payments are considered the income of the person for whom they are intended." He also cites section 6100(3), which provides that "[u]nearned income is available to the individual for whom it is intended . . . ." Thus, he argues that the manual provides that support payments "are considered the income of the person *receiving* such payments." (Emphasis added.) He then contends that the agency's interpretation in Muir's case will "produce[] an absurd result where income is counted twice," first to Muir and—presumably if his ex-spouse applies for Medicaid—also to her. But Muir's argument fails to note that his ex-spouse is not receiving these funds at all. Nor would they constitute income to her under section 6100(3), which counts sums only when the person has both "a legal interest therein and the legal ability to make it available." As we noted previously, no court has given her a lien or attachment against the disability payments coming to Muir. Accordingly, she lacks a legal interest in those specific funds. Muir has not shown that there is any arbitrary

double-counting of income that must take place under the agency's manual or the applicable statutes or regulations.

Finally, we must consider Muir's equal-protection challenge. He claims that the Medicaid rules applied in Kansas treat divorced recipients unfairly compared to those who are still married. Muir correctly notes that Medicaid makes some limited allowances when one spouse in a married couple is forced into a long-term-care facility and expenses are paid by Medicaid. Muir contends that the distinction between married couples and formerly married couples violates the equal-protection rights of the formerly married.

At the outset, it's not clear that Muir has adequately preserved this issue for our consideration. Muir's petition for judicial review did not mention it. While that doesn't deprive a reviewing court of jurisdiction, see K.S.A. 2013 Supp. 77-614(c), Muir never amended his petition to allege an equal-protection violation. In addition, the district court found his brief insufficient to present an equal-protection challenge.

But we need not make the call here about whether Muir's pleadings are adequate because his equal-protection claim fails on its merits. To show an equal-protection violation, Muir must first demonstrate that the classification results in different treatment of arguably *indistinguishable* classes of people. Even if the groups are indistinguishable, Muir must show that the differences in treatment have no rational basis. (No argument has been made here for strict or intermediate scrutiny.) See *Village Villa*, 296 Kan. at 324; *Downtown Bar and Grill v. State*, 294 Kan. 188, 194, 273 P.3d 709 (2012).

The agency responds that there is a valid legislative purpose here: Married people get greater exemptions from available income in part because the income of the non-institutionalized spouse itself may be considered in determining Medicaid eligibility. For unmarried and divorced individuals, only the income of the institutionalized person is considered.

We are not sure here that truly indistinguishable classes of people have been identified. Even if they have, however, there is a rational basis for the state's policy. See *Tarin v. Commissioner of the Division of Medical Assistance*, 424 Mass. 743, 756, 678 N.E.2d 146 (1997). Government decisions to spend money to improve the public welfare in one way and not another are generally entitled to a strong presumption of constitutionality. *Mathews v. DeCastro*, 429 U.S. 181, 185, 97 S. Ct. 431, 50 L. Ed. 2d 389 (1976).

CONCLUSION

Muir's case is easy to sympathize with. Through no fault of his own, he finds himself disabled, in a long-term-care facility, and in need of state financial assistance to pay the costs of his care. He had purchased disability insurance to help support himself and his family, yet the agency decision at issue here has required that all of the insurance benefits be paid for his care and none be paid for the support of his ex-wife and children.

Congress and the Kansas Legislature must consider cases like this, as well as all of the other needs of the state and nation. They must then choose programs and rules that will serve all of us. In doing so, they make choices that affect people like Patrick Muir and his family.

Our court's job is to determine what the rules are, not to determine what the policy should be. In this case, the state agency fairly applied the rules to Muir's situation. We have carefully reviewed the arguments he has made, but we find no error in the agency decision or in the district court's judgment affirming it.

We therefore affirm the district court's judgment.

13