NOT DESIGNATED FOR PUBLICATION

No. 119,043

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

UNITED METHODIST HOMES, d/b/a ALDERSGATE VILLAGE,
*Appellant*,

v.

KANSAS DEPARTMENT FOR AGING AND DISABILITY SERVICES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed May 17, 2019. Reversed and remanded with directions.

*Nathan D. Leadstrom* and *Samuel Feather*, of Goodell, Stratton, Edmonds & Palmer, LLP, of Topeka, for appellant.

*Kahlea M. Porter*, litigation counsel, of Kansas Department for Aging and Disability Services, for appellee.

Before MALONE, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: State government requires people, policies and procedures, rules and regulations, and money. Eliminate any of these components and it will not work. In this appeal of a state agency action, United Methodist Homes, d/b/a Aldersgate Village, Inc., asks us to reverse a district court's order denying relief in its attempt to overturn the Kansas Department for Aging and Disability Services' reduction to its Medicaid daily reimbursement rate. Because Aldersgate's agency appeal was peremptorily dismissed, there is no real agency record for us to review. Frankly, we are unsure exactly how the

1

Department for Aging arrived at a 4.47 percent reduction to the reimbursement rate instead of a 4 percent reduction announced by the Governor. Thus, we reverse the ruling of the district court and remand the matter to the Office of Administrative Hearings where the Department for Aging can make clear how its calculations were made. We find it pointless to remand the matter to the district court since it is hampered with the same scant record that we have.

We will first review the case record and then examine the statutory thicket that applies to Medicaid payments in Kansas. After that, we look at the allotment system that developed during the low-state-revenue years and show how that system trumped many actions of the agency involved in Medicaid reimbursements. Finally, we point out that the Department for Aging's actions may or may not comply with the rule-making law that controls all state agencies and explain why we must remand this case for further fact-finding.

*Medicaid funding in Kansas is a joint venture.*

Medicaid is a joint federal-state program providing medical assistance to eligible individuals. Its purpose is to provide medical and rehabilitation assistance to those who qualify as poor, aged, blind, or disabled. See 42 U.S.C. § 1396 et seq. (2012); *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 317, 291 P.3d 1056 (2013).

Two Kansas state agencies control the Kansas Medicaid program. The Kansas Department of Health and Environment supervises and administers the Medicaid state plan. But the program is funded through the Kansas Department for Aging and Disability Services. The Department for Aging receives and disburses federal funds for the Medicaid program. Thus, we focus on this department. We will refer to the agency as the Department for Aging.

2

Aldersgate Village is a skilled nursing facility in Topeka, Kansas that United Methodist Homes, Inc. operates. It receives Medicaid reimbursement at a daily rate set by the Department for Aging.

Governor Sam Brownback approved House Substitute for Senate Bill 161 in March 2016. The bill authorized a system of allotments to reduce state general fund expenditures for fiscal year 2017 if the state general fund ending balance was projected to fall below $100 million. L. 2016, ch. 12, § 98.

Despite the announcement of possible allotments, the Department for Aging published a public notice in the Kansas Register stating that the proposed daily Medicaid reimbursement rate for Aldersgate would be $215.76. This reflected an increase over the prior year's rate. 35 Kan. Reg. 295 (April 14, 2016).

Then, the Governor approved Senate Substitute for H.B. 2365 (2016), which required nursing facility reimbursement rates for fiscal year 2017 to be determined by a statutory three-year rolling average method set out in K.S.A. 2015 Supp. 75-5958, despite the 2015 appropriations bill. L. 2016, ch. 107, § 1.

Finally, the Governor, in a public statement, advised that he had signed House Substitute for S.B. 249—the budget bill—and announced allotments of $97 million representing a 4 percent reduction to most state agencies. These included reductions to the Medicaid program through 4 percent provider rate reductions to the Department for Aging and the Department of Health and Environment.

In response, on June 2, 2016, the Department for Aging published its notice in the Kansas Register that "Effective for dates of service on or after July 1, 2016, the calculated per diem [Medicaid] reimbursement for all nursing facilities shall be reduced by an amount equal to 4.47%." 35 Kan. Reg. 529 (June 2, 2016). In the scant record we

3

have, that is the first mention of a reduction of 4.47 percent. All prior reductions were announced at 4 percent. The notice stated Aldersgate's reimbursement rate would be $204.69. 35 Kan. Reg. 533 (June 2, 2016).

Then, the other watchdog of Medicaid in Kansas, the Department of Health and Environment, published a notice in the Kansas Register of a 4 percent reduction of Medicaid payments:

"In order to meet the Governor's SFY 2017 budget allotments, the Kansas Department of Health and Environment will apply a Medicaid 'Budget Shortfall' 4% payment reduction for services from July 1, 2016 forward. The net Medicaid payment will be reduced by 4%. The payment reduction is not a reduction on the current rates but is a reduction to the final Medicaid amount (net reimbursement amount)." 35 Kan. Reg. 547 (June 9, 2016).

Later in June 2016, the Department for Aging notified Aldersgate that its Medicaid reimbursement rate effective July 1, 2016, would be $204.69 after making a "'Budget Adjustment'" of 4.47 percent.

Because Medicaid is a joint venture, states that participate in Medicaid must submit a state Medicaid plan to the Center for Medicare and Medicaid Services (CMS) for approval. CMS approved an amendment to the Kansas Medicaid state plan for the 4.47 percent rate reduction to apply retroactively to July 1, 2016.

Aldersgate appealed the rate reduction to the Office of Administrative Hearings. The administrative law judge granted the Department for Aging's motion to dismiss. The Division of Health Care Finance State Appeals Committee affirmed the dismissal of Aldersgate's claim.

After exhausting its administrative remedies, Aldersgate sought judicial review of the agency action. It contended that:

4

- the Department for Aging acted beyond its jurisdiction by failing to follow state and federal statutes when calculating its Medicaid reimbursement rate;

- the Department for Aging violated the Kansas Rules and Regulations Filing Act; and

- the 4.47 percent reimbursement rate reduction was otherwise unreasonable, arbitrary, or capricious.

The district court denied Aldersgate's petition. The court ruled that:

- federal compliance should be judged by CMS, which had approved the State plan change (we note that ruling was not appealed and we see no issue here about compliance with federal law);

- the reimbursement rate for nursing facilities may be lawfully reduced under state law by an allotment by the executive branch;

- the reduction was not a rule or a regulation subject to the Rules and Regulations Filing Act; and

- the agency action was not otherwise unreasonable, arbitrary, or capricious.

*We review the applicable law.*

A brief review of the law is helpful at this point. State agency actions are reviewable under the Kansas Judicial Review Act. See K.S.A. 2018 Supp. 77-601 et seq. When we apply the Act here, a court may grant relief if:

- the agency has acted beyond the jurisdiction conferred by any provision of law;

- the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure; or

- the agency action is otherwise unreasonable, arbitrary, or capricious. K.S.A. 2018 Supp. 77-621(c)(2), (5), (8).

We exercise the same statutorily limited review of the agency's action as the district court, as though the appeal had been made directly to the appellate court. *In re Tax Appeal of Fleet*, 293 Kan. 768, 776, 272 P.3d 583 (2012). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity. K.S.A. 2018 Supp. 77-621(a)(1); *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 953, 335 P.3d 1178 (2014). Applying that principle here means it is up to Aldersgate to prove the invalidity of the agency action.

As an appellate court, we do not defer to an agency's statutory interpretation. *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013). Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

Properly promulgated administrative regulations have the force and effect of law. K.S.A. 77-425; see *Mitchell v. Petsmart, Inc.*, 291 Kan. 153, 168, 239 P.3d 51 (2010). Agencies generally may not disregard their own rules and regulations. *Schmidt v. Kansas Bd. of Technical Professions*, 271 Kan. 206, 221, 21 P.3d 542 (2001).

*The parties take opposing positions in this lawsuit.*

In renewing one of its arguments made in district court, Aldersgate contends that the 4.47 percent reduction made by the Department for Aging, based solely on budgetary considerations, violated state statutes setting forth the procedure for calculating "reasonable and adequate" Medicaid reimbursement rates and for implementing and filing rule changes. In its view, the Department for Aging had to consider more than the budget as a factor under K.S.A. 2016 Supp. 39-708c(x) to set a "reasonable and adequate" Medicaid reimbursement rate using the cost reports from the last three years, despite the language in K.S.A. 2016 Supp. 75-5958 and the allotment authority in K.S.A. 2016 Supp. 75-3722. Aldersgate contends that there is no evidence in the record that the

6

Department for Aging conducted such an analysis to determine whether the reduced reimbursement rate was reasonable and adequate. Aldersgate argues that the Department for Aging must both comply with state law (as the agency's authority comes from the Kansas Legislature) and get federal approval from CMS that the state's Medicaid plan complies with federal law.

For its part, the Department for Aging contends that it complied with the law and considered all applicable statutes and regulations throughout publishing its notices, submitting its amendment to CMS, and administering the approved State Plan amendment. The Department for Aging maintains that the budget cuts were implemented to balance the budget which were necessary and beneficial to the state and it was a decision made under the allotment system by the Secretary of Administration and handed down to state agencies. It contends that the State can consider its budget when amending the state Medicaid plan. In response to K.S.A. 2016 Supp. 39-708c(x) specifically, the Department for Aging contends "The State plan is approved or denied by CMS on a federal level, not on a state level." Finally, the Department for Aging contends that federal law preempts state law on these points and the lawsuit should be dismissed for that reason, as well.

*We review the Kansas Medicaid statutes.*

Fundamentally, administrative agencies are creatures of statute and their power depends on authorizing statutes; therefore, any exercise of authority claimed by the agency must come from within the statutes that create the agency. There is no general or common law power that can be exercised by an administrative agency. See *American Trust Administrators, Inc. v. Kansas Insurance Dept.*, 273 Kan. 694, 698, 44 P.3d 1253 (2002). Thus, we must construe the various applicable state statutes together.

Because of the breadth of the Medicaid program and some reorganization within various Kansas agencies, several Kansas statutes govern Medicaid rates. See *Village Villa*, 296 Kan. at 318. We will review three laws and one regulation. After that, we will consider applying the allotment system to this reimbursement system.

The first statute, K.S.A. 2016 Supp. 39-708c(x), deals with the establishment of Medicaid payment schedules, budgetary constraints, and sets a policy that the payment schedules be reasonable and adequate:

"(x) The secretary shall establish payment schedules for each group of health care providers. Any payment schedules which are a part of the state medicaid plan shall conform to state and federal law. The secretary shall not be required to make any payments under the state medicaid plan which do not meet requirements for state and federal financial participation.

"(1) *The secretary shall consider budgetary constraints as a factor in establishing payment schedules so long as the result complies with state and federal law.*

"(2) *The secretary shall establish payment schedules* for providers of hospital and adult care home services under the medicaid plan *that are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable state and federal laws, regulations, and quality and safety standards.* The secretary shall not be required to establish rates for any such facility that are in excess of the minimum necessary to efficiently and economically meet those standards regardless of any excess costs incurred by any such facility." (Emphases added.)

In the second statute, K.S.A. 2016 Supp. 75-5945, administration of long-term care programs was transferred from the Department for Children and Families to the Department for Aging. It also permits the Secretary to consider budgetary constraints in establishing payment schedules:

"(k) The secretary for aging and disability services may establish payment schedules for each group of providers for the long-term care programs. *The secretary shall consider budgetary constraints as a factor in establishing payment schedules so long as the result does not conflict with applicable federal law.* The secretary shall not be required to make any payments under any federal grant program which do not meet the requirements for state and federal financial participation. The secretary shall not be required to establish or pay at rates which are in excess of the minimum necessary payment requirements regardless of excess costs incurred by a provider." (Emphasis added.)

The third statute we must consider, K.S.A. 2016 Supp. 75-5958 establishes the three-year rolling average that an agency must consider in deciding nursing facility reimbursement rates for each fiscal year:

"*Subject to the provisions of appropriations acts*, the secretary for aging and disability services shall increase nursing facility reimbursement rates. The secretary for aging and disability services shall implement a base-year model of reimbursement for nursing facilities. For fiscal year 2008, the information from cost reports for calendar years 2003, 2004 and 2005 shall be averaged together to be used to calculate the base year. For fiscal year 2009 and each fiscal year thereafter, the information from the cost reports for the three most recent calendar years preceding the beginning of the fiscal year shall be averaged together to be used to calculate the base year. The secretary for aging and disability services shall not apply the 85% rule regarding number of beds filled for nursing facilities with 60 licensed beds or less to determine nursing facility reimbursement rates." (Emphasis added.)

Thus, K.S.A. 2016 Supp. 75-5958 gives the Department for Aging authority to increase nursing facility reimbursement rates each year. Then, K.A.R. 129-10-18 (2016 Supp.) sets out in detail the methodology the Department for Aging uses to calculate the per diem rates. The per diem rates are determined "at least annually, using base-year cost information submitted by the provider." K.A.R. 129-10-18(a)(1) (2016 Supp.). The regulation, K.A.R. 129-10-18(j) (2016 Supp.), sets out circumstances where the Secretary

9

may modify the rates, but does not include the state's budget as a reason. The facilities must maintain financial records and statistical data "for proper determination of reasonable and adequate rates." K.A.R. 129-10-15b(a). We must emphasize that these regulations have the force and effect of law. See *Village Villa*, 296 Kan. at 320. The methodology approved in K.A.R. 129-10-18 (2016 Supp.) corresponds with the June 2 notice in the Kansas Register, here, except for the added "budget adjustment" in the notice. 35 Kan. Reg. 529 (June 2, 2016).

To summarize, we note the three statutes and regulation establish a legal framework and a set of procedures for the distribution of Medicaid payments in Kansas. The first, K.S.A. 2016 Supp. 39-708c(x), directs the Secretary to create payment scheduling for reasonable and adequate reimbursement of the expenses of care providers. Then, the second, K.S.A. 2016 Supp. 75-5945(k), gives direction to the Secretary for the Department for Aging to make the payments and consider budget constraints while doing so. After that, the third statute, K.S.A. 2016 Supp. 75-5958, creates the three-year rolling average methodology and also directs that provision of appropriation acts will limit the amount of funds available for reimbursement. And finally, K.A.R. 129-10-18 (2016 Supp.) details how all of this reimbursement process is to be carried out.

We turn now to the allotment system.

*During times of revenue shortfalls, an allotment system of budget reductions was developed.*

Basically, K.S.A. 2016 Supp. 75-3722 delegates authority from the legislative branch of government to the executive branch to reduce appropriations made by the Legislature in a given fiscal year through an allotment system. An allotment is defined by K.S.A. 75-3701(6) as a limitation on the use of amounts available to state agencies under the allotment system with a period of one to 12 months within a fiscal year.

10

Additional details of the allotment system are also important. The State can exercise an allotment in two situations—one is relevant here. Specifically, an allotment is required when the Secretary of Administration finds that the State's resources are likely to be insufficient to finance the Legislature's appropriations for a given fiscal year—to balance the State's budget. K.S.A. 75-3722; K.A.R. 1-61-1(a)(1). For such mandatory allotments, K.S.A. 2016 Supp. 75-3722 confers broad authority on the Secretary to implement an allotment plan. That statute specifically commands that expenditures cannot exceed resources:

> "Whenever for any fiscal year it appears that the resources of the general fund or any special revenue fund are likely to be insufficient to cover the appropriations made against such general fund or special revenue fund, *the secretary of administration,* on the advice of the director of the budget, *shall, in such manner as the secretary may determine,* inaugurate the allotment system so as to *assure that expenditures for any particular fiscal year will not exceed the available resources of the general fund or any special revenue fund for that fiscal year.*" (Emphases added.) K.S.A. 2016 Supp. 75-3722(b).

Finally, the allotment system may alternatively be implemented "only if in the opinion of the secretary of administration on the advice of the director of the budget, the use of an allotment plan is necessary or beneficial to the state." K.S.A. 2016 Supp. 75-3722(a). If that happens, the statute lists several factors the Secretary of Administration must consider. See K.S.A. 2016 Supp. 75-3722(a). "Agencies affected . . . shall be notified in writing at least 30 days before such decisions may become effective." K.S.A. 2016 Supp. 75-3722(c)(2). The Governor may review the Secretary of Administration's decision, and the Governor's decision is final. K.A.R. 1-61-2(c); K.A.R. 1-61-3.

The allotment system then covers all of the state agencies. We consider it to be an overriding appropriation act that commands across-the-board budget reductions in times

11

of revenue shortfall. Simply put, the state agencies can only spend what money the state has, and no more.

*There is no federal preemption here.*

We begin by rejecting the Department for Aging's contention that federal law preempts our Kansas Rules and Regulations Filing Act. Basically, the agency argues that 42 C.F.R. § 447.253 (2016), a rule that requires state Medicaid plan amendments to be approved by CMS, makes compliance with state rules and regulations "physically impossible to efficiently perform the State's duties." In other words, having to run back and forth to CMS every time the agency wants to modify a reimbursement rate is unworkable. But inefficiency is not the basis for federal preemption.

Preemption arguments are based on the Supremacy Clause of the United States Constitution. This clause gives Congress the power to preempt state law. In Kansas, when deciding whether a state law is preempted, "'the purpose of Congress is the ultimate touchstone.'" *State v. Garcia*, 306 Kan. 1113, 1117, 401 P.3d 588 (2017), *cert. granted* 139 S. Ct. 1317 (2019). The type of preemption at issue is conflict-impossibility preemption, which arises when compliance with federal and state law is, practically speaking, impossible. 306 Kan. at 1119.

We are unconvinced that the Kansas Medicaid rules are rendered impossible by federal law on this point. Two reasons persuade us that federal preemption does not apply here. We point first to the design of the program. Medicaid "is a cooperative federal-state program, governed by both federal and state law." *Muir v. Kansas Health Policy Authority*, 50 Kan. App. 2d 854, 859, 334 P.3d 876 (2014). Subject to CMS's approval, "states enact and administer their own Medicaid programs within established limits." 50 Kan. App. 2d at 859. It is for Kansas to decide how the program is to be administered in Kansas, not the federal government.

12

Second, participating states are given "'substantial discretion to choose the proper mix of amount, scope, and duration limitations' of their respective Medicaid programs. [Citation omitted.]" *Hutson v. Mosier*, 54 Kan. App. 2d 679, 685, 401 P.3d 673 (2017). So Kansas can and has promulgated administrative regulations that govern Medicaid that have the force and effect of law. 54 Kan. App. 2d at 686. As a result, Kansas, as a participant in the joint program, has some flexibility in how it is administered here.

We also are unconvinced by the Department of Aging's impossibility claim. We see no requirement that the Department must promulgate a rule for every rate adjustment for individual service providers, but only must do so when it changes *how* it calculates the rates. In other words, when the Department of Aging's methodology changes, the rules must change. There is nothing in the record to suggest that following the Kansas Rules and Regulations Filing Act makes it impossible for the Department of Aging to effectively perform its duties. After all, agencies must follow their regulations. See *Schmidt*, 271 Kan. at 221. We move now to the legality of budgetary reductions.

*We examine the district court's ruling.*

When the district court waded into this statutory bramble, it held that any increase in nursing facility rates—such as the one published in the April 14, 2016, Kansas Register, 35 Kan. Reg. 295 (April 14, 2016)—is subordinate to the allotment and governed by the allotment. The court found this means that "the base-year model of reimbursement for nursing facilities, and any number calculated under that model, may be lawfully reduced by the allotment."

We agree with that view. After reviewing all of these statutes, we hold that all the required agency rate determinations are subject to the appropriations acts. To rule otherwise would require us to ignore the language of the statutes "subject to the appropriations acts" and thus, would render the allotment law meaningless.

13

After all, the most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *Hoesli*, 303 Kan. at 362. When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act in pari materia with a view of reconciling and bringing the provisions into workable harmony if possible. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013). Courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *Milano's Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 501, 293 P.3d 707 (2013).

It appears from the limited record that the Department for Aging initially followed the applicable statutes and regulations to set a reasonable and adequate reimbursement rate using prior year cost reports (the $215.76 published in the April 2016 Kansas Register), but then the executive branch reduced Medicaid provider rates across the board under its expanded allotment authority given by House Substitute for S.B. 161 (2016) and the Department reduced the nursing facility reimbursement rate accordingly (to $204.69 as published in the June 2, 2016 Kansas Register) without again considering whether the reduced rate was reasonable or adequate.

We hold that this procedure was permitted when we construe these statutes together. The specific statute that directs the Department for Aging to increase nursing facility reimbursement rates each fiscal year, using the last three calendar years' cost reports is K.S.A. 2016 Supp. 75-5958 (rather than K.S.A. 2016 Supp. 39-708c[x]), but the increase is "subject to the provisions of appropriations acts." The Department for Aging's rate determination had to be reduced by the allotment.

But having said that, we are confronted with a problem that we cannot solve with this record. How was the 4.47 percent reduction determined? During oral arguments here, we were told by counsel for the Department for Aging that the calculation is not in the

14

record on appeal. We think the issue is important because of the Department for Aging's obligation to comply with the law concerning rule making.

*All state agencies must comply with the Rules and Regulations Filing Act.*

The Rules and Regulations Filing Act, K.S.A. 2018 Supp. 77-415 et seq., requires proposed rules and regulations to go through a public notice and hearing process, and be formally published before taking effect. The adopting agency must:

- Give at least 60 days' notice of its intended action in the Kansas Register.
- Include in the notice the time and place of the public hearing to be held and a specific statement that the 60 days' notice constitutes a public comment period. K.S.A. 2018 Supp. 77-421(a)(1).
- File an economic impact statement. K.S.A. 2018 Supp. 77-416(a).
- Prepare a concise statement of the principal reasons for adopting the rule and regulation including the reasons for any substantial change between the text of the proposed rule and regulation and the text of the rule and regulation finally adopted. K.S.A. 2018 Supp. 77-421(b)(1)(B).

All rules and regulations shall be filed with the Secretary of State and become effective 15 days following its publication in the Kansas Register. K.S.A. 77-426.

Here, on June 2, 2016, the Department for Aging published in the Kansas Register the final nursing facility rates for fiscal year 2017, to be effective July 1, 2016. This was the first notice which mentioned a 4.47 percent "budget adjustment."

The district court ruled that the reimbursement rate reduction was not a rule or regulation because the allotment was a decision handed down by the Secretary of Administration to the state agencies. But in oral argument, we were informed that this specific 4.47 percent reduction was determined by the Department for Aging. That is not

15

the 4 percent reduction announced by the Governor. Thus, the question arises, is the 4.47 percent reduction a new rule or regulation made by the agency?

The distinction here is important. An agency policy is a rule or regulation if the agency does not exercise discretion in applying it; the policy has general application to those doing business with the agency; and the agency treats the policy as having the effect of law. See *Schneider v. Kansas Securities Comm'r*, 54 Kan. App. 2d 122, Syl. ¶¶ 11, 13, 397 P.3d 1227 (2017), *rev. denied* 307 Kan. 988 (2018). It is fair to say that the Department for Aging need not promulgate a rule when it calculates the annual reimbursement rates for nursing facilities, but it must do so when it changes its *method* for calculating the rates.

Did the Department for Aging change the method here? In the June 2, 2016, notice, it included a "budget adjustment" factor in its methodology for calculating nursing facility reimbursement rates. But technically, K.A.R. 129-10-18 (2016 Supp.), which governs nursing facility reimbursement rates, does not include a "budget adjustment" factor. The statute, however, does permit the agency to consider the budget as a factor. See K.S.A. 2016 Supp. 39-708c(x)(1).

A ruling from another state is illuminating. The New Hampshire Supreme Court ruled that the state agency's budget neutrality factor—an across-the-board rate reduction the agency applied after it determined the individual Medicaid reimbursement rate for nursing homes—was a rule that should have gone through the state rulemaking process. *Bel Air Assocs. v. N.H. Dep't of Health & Human Servs.*, 154 N.H. 228, 231, 235, 910 A.2d 1232 (2006). But in that case, it was also alleged the budget neutrality factor was imposed by the agency without legislative authorization. 154 N.H. at 232.

*Our conclusion is to remand for fact-finding.*

We note the Kansas regulations included a budget limitation on reimbursements to nursing home facilities in the 1970s, but our Supreme Court struck that down because the states cannot alter federal Medicaid standards "to suit the state's budgetary needs." *Country Club Home, Inc. v. Harder*, 228 Kan. 756, 765, 620 P.2d 1140 (1980), *modified* 228 Kan. 802, 623 P.2d 505 (1981).

Here, what is most troubling is not that the Department for Aging added a "budget adjustment" factor to its methodology after the allotment was announced, it is that the agency, without explanation, reduced the cost-based nursing facility reimbursements by a greater amount than what was seemingly required by the Governor's allotment.

Thus, this raises the question: Is there some factor other than the budget that the agency used to get from 4 percent to 4.47 percent? This question must be answered on remand. We recognize and acknowledge that "a court may not substitute its judgment for that of the Secretary of [Department for Aging] in determining which method is preferable to determine a reasonable cost-related basis for reimbursing long term care facilities." *Harder*, 228 Kan. at 763. But with this record, we simply cannot tell if the Department for Aging added a factor that would require an amended regulation, which would then require compliance with the Rules and Regulations Filing Act. Nor can we, for the same reason, tell if the greater rate reduction was arbitrary and capricious.

Aldersgate has a right to know why its reimbursement rate was reduced 4.47 percent and not just 4 percent as announced by the Governor's allotment order.

We reverse the district court's dismissal of Aldersgate's claims and remand this matter to the Office of Administrative Hearings for further fact-finding.

17

Reversed and remanded with directions.